ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| TAILI TEE THULA TOVAR<br><br>Parte Apelante<br><br><br>v.<br><br><br><br>ASDRÚBAL SIMÓN MATA CABELLO<br><br>Parte Apelada | KLAN202400014 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>SJ2020RF00274<br><br>Sala: 3001<br><br>Sobre:<br>Divorcio y Custodia |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de marzo de 2024.

Compareció ante este Tribunal la parte apelante, la Sra. Taili Tee Thula Tovar (en adelante, la "señora Thula Tovar" o la "Apelante"), mediante un recurso de apelación presentado el 4 de enero de 2024. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 4 de diciembre de 2023, notificada y archivada en autos al día siguiente.[1] Dicho dictamen fue objeto de una "**Moción de Relevo de Resolución conforme a la Regla 49.2 de Procedimiento Civil**" interpuesta por la señora Thula Tovar, la cual fue declarada "No Ha Lugar" mediante *Orden* de 11 de diciembre de 2023.

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen apelado.

**I.**

---

[1] Por tratarse de un dictamen que pone fin a la controversia relacionada con la pensión alimentaria, aun cuando fue titulado *Resolución*, el dictamen impugnado constituye una sentencia por lo que el recurso adecuado para recurrir de ella es la apelación. Figueroa v. Del Rosario, 147 DPR 121, 129 (1998).

Número Identificador
SEN2024_____

El caso de autos se originó el 19 de febrero de 2020, con la presentación de una "**Demanda de Divorcio por la Causal de Adulterio, Trato Cruel e Injurias Graves**" (en adelante, la "Demanda") por parte de la Apelante en contra del Sr. Asdrúbal Simón Mata Cabello (en adelante, el "señor Mata Cabello o el "Apelado"). A través de dicho escrito, la señora Thula Tovar solicitó la disolución del vínculo matrimonial, la custodia de los hijos menores procreados por las partes, la división de la masa conyugal y el establecimiento de las pensiones alimentarias para los menores y para ella. Alegó que conforme al Convenio de la Haya sobre los Aspectos Civiles del Secuestro Internacional de Niños de 25 de octubre de 1980 (en adelante "Convenio de la Haya"), la residencia habitual de los menores era Puerto Rico y que por tal razón, los tribunales de Puerto Rico tenían autoridad y competencia para proteger el bienestar de éstos.

Más adelante, el 6 de marzo de 2020, el señor Mata Cabello presentó "**Moción en Solicitud de Desestimación y en Solicitud de Orden de Retorno de los Menores a Bogotá, Colombia, en virtud de las Disposiciones de la Convención de la Haya sobre los Aspectos Civiles del Secuestro Internacional de Niños y el "International Child Abduction Remedies Act**", mediante la cual argumentó que el TPI carecía de jurisdicción para atender el divorcio y la custodia de los hijos. No obstante, enfatizó que el foro primario sí poseía jurisdicción para implementar las disposiciones del Convenio de la Haya y ordenar el regreso de los menores a Colombia. Siguiendo esta misma línea, el 12 de marzo de 2020, el Apelado presentó una "**Demanda de Divorcio**" en contra de la Apelante ante el Juzgado Veintinueve de Familia de Bogotá D.C., Rama Judicial del Poder Público de la República de Colombia, bajo el núm. 11001-31-10029-2020-00141-00 (en adelante, "Juzgado 29 de Familia de Bogotá").

Posteriormente, el 30 de octubre de 2020, el TPI emitió una *Resolución* en la que desestimó la "**Demanda**", por carecer de jurisdicción para decretar el divorcio, ya que el Artículo 97 del Código Civil, 31 LPRA

sec. 331[2], establece que, para radicar una demanda de divorcio, la persona debe haber residido en Puerto Rico un año antes de instar la acción. Asimismo, concluyó que la Apelante y los menores eran residentes de Bogotá, Colombia desde febrero de 2018. En desacuerdo con esta determinación, el 19 de noviembre de 2020, la señora Thula Tovar presentó una "**Moción de Reconsideración**", la cual fue declarada "No Ha Lugar" el 24 de noviembre de 2020.

Así las cosas, el 28 de diciembre de 2020, la señora Thula Tovar presentó un recurso de apelación bajo el alfanumérico KLAN202001039. El 12 de marzo de 2021, un panel hermano de este Tribunal de Apelaciones resolvió que no se atendieron todos los reclamos presentados en la "**Demanda**", por lo que, ordenó la continuación de los procedimientos e instruyó al TPI a que determinara si poseía jurisdicción sobre la materia o autoridad para atender todo asunto al amparo del Convenio de la Haya y el "International Child Abduction Remedies Act", 42 USC sec. 11601 *et seq.* (en adelante, "ICARA"). De igual manera, expresó que, de determinar que poseía autoridad sobre las referidas leyes, el foro primario debía resolver: (1) si Puerto Rico es la residencia habitual de los menores y (2) establecer un estado de derecho provisional relacionado con la custodia, relaciones paternofiliales, alimentos provisionales y *litis expensas*.

El 6 de julio de 2021, el TPI emitió otra *Resolución* en la cual resolvió lo siguiente: (1) los hijos menores de edad son residentes habituales de Bogotá, Colombia; (2) el Tribunal posee jurisdicción plena para atender los reclamos basados en las disposiciones del Convenio de la Haya y el ICARA, *supra*; (3) la Apelante sustrajo ilícitamente a los menores de su residencia habitual;  (4) corresponde a los tribunales de Colombia atender cualquier asunto relacionado al divorcio, la custodia de los menores, las relaciones filiales, los alimentos de los menores y la pensión excónyuge; y (5) por último, ordenó la restitución inmediata de los menores a su residencia habitual en Colombia.

---

[2] Se cita el Código Civil anterior por ser el aplicable a los hechos del caso.

Inconforme con dicho dictamen, el 12 de julio de 2021, la señora Thula Tovar presentó otro recurso de apelación ante este foro apelativo intermedio, caso núm. KLAN202100519. Así pues, el 29 de septiembre de 2021, este Tribunal emitió *Sentencia* mediante la cual confirmó la *Resolución* emitida por el TPI, excluyendo la parte sobre el retorno de los menores a Colombia. A su vez, el panel hermano ordenó la celebración de una vista evidenciaria para determinar la residencia habitual de los menores.

Así las cosas, el 4 de marzo de 2022, el Juzgado 29 de Familia de Bogotá decretó el divorcio del matrimonio que contrajeron el señor Mata Cabello y la señora Thula Tovar, dispuso que la patria potestad sería ejercida por ambos padres, impuso las condiciones mediante las cuales se llevarían a cabo las relaciones filiales y fijó una pensión alimentaria de $5,000.00 millones de pesos colombianos mensuales. Este dictamen fue modificado por la *Sentencia* emitida por la Sala de Familia del Tribunal Superior del Distrito Judicial de Bogotá el 10 de agosto de 2022, a los fines de realizarle algunos cambios al régimen de visitas paternofiliales.

Luego de la celebración de una vista, el 1 de junio de 2023, el TPI tomó conocimiento judicial de la *Sentencia* de Exequátur dictada el 26 de mayo de 2023, en el caso núm. BY2022CV05569, mediante la cual se le concedió entera fe y crédito en Puerto Rico a las *Sentencias* dictadas por los foros judiciales de Colombia el 4 de marzo de 2022 y el 10 de agosto de 2022, respectivamente. El 27 de marzo de 2023, el *Informe de la Examinadora de Pensiones Alimenticias Provisional* fue acogido mediante *Resolución*. Así pues, se le ordenó al señor Mata Cabello a proveer una pensión alimentaria de $4,099.18 mensuales. El 5 de julio de 2023, el apelado presentó "**Moción en Solicitud de Relevo de Resolución del 27 de marzo de 2023 al amparo de la Regla 9.2 (E)**" (en adelante, "Moción en Solicitud de Relevo de Resolución"). Señaló que dicha determinación incidía sobre la pensión alimentaria impuesta por el Juzgado 29 de Familia de Bogotá. Posteriormente, el 6 de enero de 2022, la señora Thula Tovar presentó una "**Demanda Enmendada**" para incluir una causa de acción

adicional sobre suspensión de patria potestad y otra en cobro de dinero por pago por tercero.

Finalmente, el TPI emitió una *Resolución* en la cual esbozó que, al momento del traslado de los menores, éstos eran residentes de Colombia y fueron sustraídos ilícitamente de su lugar de residencia habitual por su madre. También concluyó que el foro con jurisdicción para atender los asuntos relacionados al divorcio, a la custodia de los menores, las relaciones filiales, los alimentos de los menores y la pensión excónyuge es el Juzgado 29 de Familia de Bogotá. Además, indicó que, conforme al interés óptimo de los menores, éstos deben permanecer en Puerto Rico sujetos a los términos y condiciones de las *Sentencias* de los tribunales de Colombia.

De igual manera, concluyó el foro revisado que habiéndose impartido valor jurídico en Puerto Rico por vía de exequatur a la *Sentencia de Divorcio* dictada en Colombia, la cual establece un plan de relaciones paternofiliales y una pensión alimentaria a favor de los menores, declaró "Con Lugar" la "**Moción en Solicitud de Relevo de Resolución del 27 de marzo de 2023**" presentada por el Apelado el 5 de julio de 2023. A esos efectos, dejó sin efecto la *Resolución* de 27 de marzo de 2023, así como la pensión alimentaria allí establecida, junto al balance retroactivo en ella computado. Del mismo modo, ordenó el TPI al demandado el cumplimiento estricto con la *Sentencia* del Juzgado 29 de Familia de Bogotá, en específico con el pago de la pensión alimentaria allí establecida de 5,000,000.00 de pesos colombianos mensuales, o su equivalente en dólares americanos, efectivo al 10 de agosto de 2022. Igualmente, dispuso que cualquier revisión o modificación de dicha pensión alimentaria, habrá de ser presentada y atendida en los foros judiciales de Colombia.

Inconforme con lo anteriormente resuelto, la Apelante acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> *PRIMER SEÑALAMIENTO DE ERROR- ERRÓ EL TPI AL DECLARAR CON LUGAR LA MOCIÓN EN SOLICITUD DE RELEVO DE RESOLUCIÓN DEL 27 DE MARZO DE 2023 AL*

*AMPARO DE LA REGLA 9.2 (E), PRESENTADA POR EL DEMANDADO EL 5 DE JULIO DE 2023.*

*SEGUNDO SEÑALAMIENTO DE ERROR- ERRÓ EL TPI AL DEJAR SIN EFECTO UN DICTAMEN DE PENSIÓN ALIMENTARIA LUEGO DE QUE EL ALIMENTISTA ADMITIERA CAPACIDAD ECONÓMICA, Y LUEGO DE QUE LAS PARTES ESTIPULARAN TANTO LAS PARTIDAS ECONÓMICAS COMO LA DEUDA POR EL EFECTO RETROACTIVO DEL ACUERDO.*

*TERCER SEÑALAMIENTO DE ERROR- ERRÓ EL TPI AL INTERPRETAR I.C.A.R.A. EN CUANTO A LA DESIGNACIÓN DE RESIDENCIA HABITUAL O DOMICILIO Y CEDER EL EJERCICIO DE SU JURISDICCIÓN EN FAVOR DE LA JURISDICCIÓN DE COLOMBIA.*

*CUARTO SEÑALAMIENTO DE ERROR- ERRÓ EL TPI EN SU APRECIACIÓN DE LA PRUEBA DOCUMENTAL Y TESTIFICAL Y EN CUANTO A SU SUFICIENCIA PARA APOYAR SUS CONCLUSIONES.*

El 10 de enero de 2024, emitimos *Resolución* mediante la cual le concedimos al Apelado hasta el 17 de enero de 2024 para presentar su alegato en oposición. Dicho plazo fue extendido hasta el 22 de enero de 2024, por vía de la *Resolución* emitida el 16 de enero de 2024. Ese mismo día, compareció la señora Thula Tovar mediante "**Moción acreditando método de reproducción de la prueba oral**".

En el ínterin, el señor Simón Mata presentó su alegato en oposición al recurso ante nuestra consideración. Así el trámite apelativo, el 23 de enero de 2024, emitimos otra *Resolución* concediéndole a la Apelante el plazo solicitado para presentar la exposición narrativa de la prueba y establecimos los términos posteriores conducentes al perfeccionamiento del recurso, luego de la presentación de la misma. A pesar de lo anterior, el 11 de marzo de 2024, la señor Thula Tovar compareció ante este Tribunal mediante "**Moción para que se dé por perfeccionado [el] Recurso**". Expresó que se encontraba en estado de indefensión económica e impedida de financiar la exposición narrativa de la prueba, por lo que solicitó que diéramos por perfeccionado el recurso que nos ocupa.

En vista de lo anterior, y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El 25 de octubre de 1980, se aprobó el Convenio de la Haya, *supra,* con el objetivo de proteger a los menores a nivel internacional de los efectos perjudiciales que podría ocasionarle un traslado o retención ilegal y velar porque los derechos de custodia y de visita provistos por un Estado contratante, se respeten en los demás Estados Contratantes. La Convención ha sido definida como procesal y jurisdiccional, pues no ofrece parámetros internacionales uniformes para determinar los derechos de custodia. De Los Ríos v. Meléndez, 141 DPR 282, 316-317 (1996) (Sentencia). Este tratado permite que todas las controversias de custodia sean litigadas en la jurisdicción donde el menor es un residente habitual. Íd., pág. 317. Los países que se unen a la Convención acuerdan devolver a todos los menores que han sido sustraídos o retenidos ilícitamente al estado de su residencia habitual. Íd.

El Artículo 3 del referido Convenio dispone que un traslado se considerará ilegal en las siguientes circunstancias:

1. Cuando se hayan producido con infracción de un derecho de custodia atribuido, separada o conjuntamente, a una persona, a una institución, o a cualquier otro organismo, con arreglo al derecho vigente en el Estado en que el menor tenía su residencia habitual inmediatamente antes de su traslado o retención; y

2. Cuando este derecho se ejercía en forma efectiva, separada o conjuntamente, en el momento del traslado o de la retención, o se habría ejercido de no haberse producido dicho traslado o retención.

De la misma forma, el Artículo 17 del Convenio de la Haya, *supra,* indica que la existencia de una decisión sobre custodia en el estado en que se encuentran los menores ilegalmente sustraídos no debería ser motivo para denegar la orden de retorno del menor. Así pues, las sentencias dictadas en contravención de este Tratado no pueden modificar el lugar de residencia habitual del menor.

Por su parte, la legislación ICARA, *supra,* fue promulgada con el propósito de definir el procedimiento a seguir para la implementación del Convenio de la Haya en Estados Unidos. Según este estatuto, un

peticionario establece un caso *prima facie* de remoción ilegal demostrando, por preponderancia de la evidencia, que: (1) el país extranjero era la residencia habitual del menor justo antes de la fecha de su traslado; (2) la remoción violó los derechos de custodia del peticionario bajo las leyes del país extranjero, y (3) el peticionario ejercitaba la custodia del menor al momento de la remoción. 42 USC sec. 11603(e)(1)(A).

De otro lado, el "Federal Full Faith and Credit for Child Support Orders Act", 28 USC sec. 1738B *et seq.*, fue creado con objetivo de que ningún estado pueda alterar una determinación de pensión alimentaria que cumpla con las leyes del estado en que se emite. Cancel Rivera v. González Ruiz, 200 DPR 319, 331 (2018). Con este fin, esta ley exige el cumplimiento del dictamen original de pensión alimentaria establecido por el estado emisor. Íd. Por lo tanto, los tribunales de Puerto Rico deben otorgar entera fe y crédito a los decretos sobre pensión alimenticia emitidos en otros estados o jurisdicciones. Íd. De igual modo, esta obligación se extiende a otras jurisdicciones, cuando la orden es emitida por los tribunales de Puerto Rico.

Para que una orden de pensión alimentaria sea compatible con los parámetros del "Federal Full Faith and Credit for Child Support Orders Act", *supra,* debe cumplir con los siguientes requisitos:

> (1) a court that makes the order, pursuant to the laws of the State in which the court is located and subsections (e), (f), and (g)—
> (A) has subject matter jurisdiction to hear the matter and enter such an order; and
> (B) has personal jurisdiction over the contestants; and
> (2) reasonable notice and opportunity to be heard is given to the contestants. 28 USC sec. 1738B(c).

En otras palabras, si el tribunal emisor poseía jurisdicción sobre la materia y sobre las partes, y siguió el debido proceso de ley al notificar del proceso y concederle a las partes la oportunidad de ser oídos, el dictamen se realizó conforme a las disposiciones de la "Federal Full Faith and Credit for Child Support Orders Act", *supra;* Cancel Rivera v. González Ruiz*, supra,* pág. 336. Del mismo modo, este estatuto define el término "child's home state" o residencia habitual como el lugar donde un menor vivió con uno de sus progenitores o una persona que actúe como progenitor durante

al menos seis (6) meses consecutivos inmediatamente antes del momento de la presentación de la petición de pensión de alimentos. 28 USC sec.1738B(b)(3).

**B.**

Según el derecho internacional privado, cada jurisdicción goza de una soberanía jurídica, la cual va en contra de la validez automática de sentencias dictadas en otros estados o países. Rodríguez Contreras v. E.L.A., 183 DPR 505, 514 (2011). El *exequátur* es el mecanismo procesal mediante el cual se convalidan y reconocen judicialmente las sentencias emitidas por otras jurisdicciones por los tribunales del foro donde se pretende hacer efectiva. 32 LPRA Ap. V, R. 55.1. Se consideran sentencias extranjeras aquellas dictadas por tribunales de países extranjeros y por tribunales estatales de los Estados Unidos. Gulf Petroleum *et al.* v. Camioneros, 199 DPR 962, 966 (2018). Este procedimiento tiene como objetivo garantizarles a las partes afectadas por la sentencia en una jurisdicción distinta, el derecho al debido proceso de ley y la oportunidad de ser oídas y presentar sus defensas. Toro Avilés v. P.R. Telephone Co., 177 DPR 369, 375 (2009).

En nuestro ordenamiento jurídico las sentencias extranjeras no operan *ex propio vigore*. Márquez Estrella, *Ex parte*, 128 DPR 243, 252 (1991). Es decir, se requiere el reconocimiento de los tribunales locales para concederles validez. Íd. Según la Regla 55.5 de Procedimiento Civil, el procedimiento a seguir es el siguiente:

> El tribunal, luego de resolver los planteamientos de índole procesal que sean pertinentes, determinará si la sentencia de otra jurisdicción cumple con las siguientes normas:
> […]
> (b) Si se trata de una sentencia dictada en otra jurisdicción que no sea un estado de Estados Unidos o sus territorios:
> (1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;
> (2) que se haya dictado por un tribunal competente;
> (3) que el tribunal que la emitió haya observado los principios básicos del debido proceso de ley;
> (4) que el sistema bajo el cual fue dictada se distinga por su imparcialidad y por la ausencia de perjuicio por las personas extranjeras;
> (5) que no sea contraria al orden público;
> (6) que no sea contraria a los principios básicos de justicia, y

(7) que no se haya obtenido mediante fraude. 32 LPRA Ap. V, R. 55.5.

Es importante destacar que el tribunal que lleve a cabo este proceso no puede entrar a considerar los méritos de la sentencia extranjera. Mench v. Mangual, 161 DPR 851, 856 (2004). Por tal razón, sólo se admitirá aquella prueba indispensable para esclarecer la aplicación de las normas relacionadas a la procedencia del exequátur. Rodríguez Contreras v. E.L.A., *supra,* pág. 519. Así pues, el tribunal se limitará a resolver los planteamientos pertinentes de índole procesal y a determinar si la sentencia dictada cumplió con todas las normas del Derecho internacional privado. Íd.

**C.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la

credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**III.**

Los primeros dos errores están íntimamente relacionados, por lo tanto, se abordarán de manera conjunta en la presente discusión. La señora Thula Tovar sostiene que el TPI erró al declarar "Con Lugar" la "**Moción en Solicitud de Relevo de Resolución**" y al dejar sin efecto el dictamen previo de pensión alimentaria recogido en la *Resolución* emitida por el foro apelado el 27 de marzo de 2023.

Surge del expediente del caso que la señora Thula Tovar contrajo matrimonio con el señor Mata Cabello el 21 de marzo de 2008, en el estado de la Florida, Estados Unidos de América. En el año 2012, por motivos de empleo, la pareja se mudó para Puerto Rico, donde procrearon dos hijos. Posteriormente, en el mes de julio de 2018, la familia se relocalizó a la ciudad de Bogotá, Colombia. Así las cosas, para el 8 de febrero de 2020, las partes estaban enfrentando varias desavenencias en su matrimonio, por lo que contemplaron la disolución del vínculo matrimonial. El 11 de febrero de 2020, mientras el Apelado estaba de viaje, la Apelante abandonó la jurisdicción de Colombia junto a sus dos hijos menores de edad, sin el consentimiento del señor Mata Cabello y se regresó a Puerto Rico.

Como hemos adelantado, según el Convenio de la Haya, *supra,* ocurre un traslado ilegal cuando se haya transgredido un derecho de custodia que una persona ostenta de acuerdo con la legislación en vigor en el estado donde el menor tenía su residencia habitual. Es decir, que el país extranjero era la residencia del menor antes de ser removido sin el consentimiento del progenitor. 42 USC sec. 11603(e)(1)(A). De la misma manera, el Tratado permite que las controversias sean litigadas en la jurisdicción donde el menor es un residente habitual. De Los Rios v. Meléndez, *supra*, pág. 317. Por otro lado, el "Federal Full Faith and Credit for Child Support Orders Act", *supra,* dispone que la residencia de un menor o el "child's home state" es el lugar donde un niño residió durante un período de al menos seis (6) meses consecutivos antes de presentar una acción de alimentos. **Esta legislación prohíbe la alteración de**

**pensiones alimenticias válidamente emitidas en otros estados o países extranjeros**.

En vista de lo anterior, somos de la opinión de que en nuestro caso hubo un traslado ilícito de los menores J.A.M.T. y A.I.M.T. Esto es así, ya que desde el año 2018 los menores vivieron ininterrumpidamente en Bogotá, Colombia hasta el día de su traslado, el 11 de febrero de 2020. Esto es, habitaron más de seis (6) meses consecutivos en dicho país. Cabe destacar que uno de los menores cursó *Kindergarden* y primer grado en el Colegio Nueva Granada de Bogotá, mientras que el otro asistió al centro prescolar llamado "Sésamo Kids" en Bogotá, Colombia. Por tales motivos, correspondía a los tribunales de Colombia y no a los de Puerto Rico, determinar las relaciones paternofiliales e imponer una pensión alimentaria.

Según la normativa vigente, las sentencias dictadas por estados o países extranjeros deben ser validadas y reconocidas por nuestro ordenamiento a través del mecanismo conocido como *exequátur*. 32 LPRA Ap. V, R. 55.1. Relativo a lo anterior, conviene establecer que el **4 de marzo de 2022**, el Juzgado 29 de Familia de Bogotá, además de decretar el divorcio y establecer las relaciones parentales, **impuso una pensión alimentaria a favor de los menores habidos durante el matrimonio de las partes de epígrafe**. Dicho dictamen fue modificado en cuanto a las relaciones filiales se refiere mediante *Sentencia* de 10 de agosto de 2022.

**Posterior** a que el Juzgado 29 de Familia de Bogotá impusiera la pensión alimentaria a favor de los menores, a saber, el **27 de marzo de 2023**, el TPI emitió una *Resolución* mediante la cual fijó una pensión alimentaria distinta. Así las cosas, el 26 de mayo de 2023, el TPI dictó una *Sentencia de Exequátur* en la cual se le brindó entera fe y crédito a ambas *Sentencias* dictadas por los foros judiciales de Colombia.

A la luz del tracto procesal y fáctico anterior, es evidente que la pensión alimentaria del Juzgado 29 de Familia de Bogotá se impuso **primero** que aquélla dispuesta por el foro apelado en la *Resolución* de 27 de marzo de 2023. Nótese que los foros judiciales colombianos impusieron y adjudicaron la controversia sobre los alimentos 10 meses antes que la

determinación que efectuó el TPI a esos fines. Por tanto, de conformidad con el estado de derecho vigente, es forzoso concluir que el señor Mata Cabello debe satisfacer la suma impuesta por el Juzgado 29 de Familia de Bogotá, ascendente a 5 millones de pesos colombianos o su equivalente en dólares americanos. Así pues, actuó correctamente el TPI al declarar "Con Lugar" la "**Moción en Solicitud de Relevo de Resolución**" y al dejar sin efecto el dictamen de pensión alimentaria emitido por dicho foro el 27 de marzo de 2023.

Lo anterior, puesto que el "Federal Full Faith and Credit for Child Support Orders Act", *supra*, persigue que se cumpla el **dictamen original de pensión alimentaria** establecido por el estado emisor. Por lo tanto, los tribunales de Puerto Rico debemos otorgar entera fe y crédito a los decretos sobre pensión alimenticia emitidos en otros estados o jurisdicciones. Habiéndose establecido que los foros judiciales colombianos poseían jurisdicción sobre la materia y sobre las partes, y garantizaron el debido proceso de ley al notificar del proceso y concederle a las partes la oportunidad de ser oídos, el decreto alimentario se realizó conforme a las disposiciones del "Federal Full Faith and Credit for Child Support Orders Act", *supra* y procede que sea ejecutado en nuestra jurisdicción. No se cometieron los errores señalados.

Como tercer y cuarto señalamiento de error, la Apelante arguye que el TPI erró al interpretar ICARA, *supra,* en cuanto a la designación de residencia habitual o domicilio y ceder al ejercicio de su autoridad en ley en favor de la jurisdicción de Colombia, pues incidió en la apreciación de la prueba documental y testifical presentada. No le asiste la razón, veamos por qué.

Del expediente del caso se desprende que los menores J.A.M.T. y A.I.M.T residieron en Bogotá, Colombia, de manera continua durante un (1) año y siete (7) meses antes de ser trasladados a Puerto Rico sin la autorización del Apelado, a saber: del 14 de julio de 2018 hasta el 11 de febrero de 2020. Asimismo, la señora Thula Tovar y los menores contaban con familiares y amistades en Colombia con quienes compartían

regularmente. Según las determinaciones de hechos realizadas por el foro primario y la prueba creída por el juzgador, al mudarse a Colombia, las partes no tenían contemplado regresar a la jurisdicción de Puerto Rico.

La Apelante alude a que el TPI no distinguió del concepto de permanencia y de exclusividad del domicilio, más no efectúa un análisis legal con las fuentes de derecho que sustentan su postura o hace referencia a evidencia alguna. Además, el análisis de la documentación que obra en los autos del caso en unión con el estado de derecho reseñado, conduce a la conclusión de que no se desprende ningún indicio de que el TPI se hubiera equivocado al negarse a intervenir en la adjudicación de la custodia efectuada por el Juzgado 29 de Familia de Bogotá y hacerla valer en Puerto Rico. Ello puesto que carecemos de elementos para concluir lo contrario; más aún cuando existe una admisión de la propia señora Thula Tovar en la "**Demanda de Divorcio**", a los efectos de que aprovechó que el Apelado se encontraba fuera del país el 11 de febrero de 2020 para regresar a Puerto Rico con los menores, con la intención de quedarse aquí permanentemente.[3] Nótese que, de por sí, dicha admisión demuestra la sustracción de los menores del lugar en donde tuvieron su residencia habitual por espacio de casi dos (2) años antes de que fueran trasladados a Puerto Rico por su madre y sin contar con el consentimiento del Apelado.

Adicionalmente, es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el foro de instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., *supra*. Asimismo, es sabido que, en nuestra jurisdicción, las partes que recurren ante este Tribunal tienen la ineludible responsabilidad de cumplir rigurosamente con las pautas reglamentarias aplicables que regulan el proceso de perfeccionamiento de los recursos que se presentan ante nuestra consideración. Hernández Maldonado v. Taco Maker, 181 DPR 281, 290 (2011). Nuestro Reglamento

---

[3] *Véase*, Apéndice del recurso, pág. 7, ¶23.

establece que la parte apelante está en la obligación de presentar una transcripción de la prueba, una exposición estipulada de la misma o una exposición narrativa de la evidencia oral presentada ante el foro de instancia cuando esgrime planteamientos de error cuestionando la apreciación errónea de la evidencia y las determinaciones de hechos del tribunal de instancia.[4]

Según se desprende del expediente, tenemos ante nuestra consideración planteamientos relativos a la apreciación de la prueba y tendentes a sugerir que las determinaciones de hechos no están sostenidas por la evidencia desfilada. No obstante, el expediente no cuenta con una exposición narrativa de la prueba oral que nos permita evaluar la validez de los planteamientos traídos ante nuestra consideración, toda vez que la Apelante renunció a así hacerlo mediante la "**Moción para que se dé por perfeccionado [el] Recurso**". Por lo tanto, en ausencia de ello, este Tribunal está obligado a abstenerse de revisar las determinaciones de hechos y la apreciación que le dio el foro primario en su ejercicio de aquilatar la prueba que tuvo ante su consideración.

En fin, a pesar de que los argumentos ante nos están centrados en que el TPI cometió error al apreciar la evidencia desfilada y que sus conclusiones de derecho no se ajustan a la prueba admitida durante la vista celebrada, la Apelante entendió que este Tribunal bien podría evaluar los méritos del recurso sin el beneficio de la reproducción de la prueba oral. Sostenemos, en cambio, que dicha herramienta era indispensable para ejercer nuestra función revisora. La ausencia de la exposición narrativa de la prueba oral que justifique nuestra intervención no permite que el Tribunal de Apelaciones tenga los elementos para descartar la apreciación razonada y fundamentada del foro de instancia. Hernández Maldonado v. Taco Maker, *supra*, pág. 289.

En otras palabras, estamos ante un panorama en el que contamos con simples alegaciones que no derrotan la presunción de corrección que

---

[4] *Véanse*, Reglas 19 y 76 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, RR. 19 y 76.

cobija las determinaciones de hechos y conclusiones basadas en la prueba oral, ni la adjudicación de credibilidad que efectuó el foro primario. Por lo tanto, huérfano el expediente apelativo de evidencia específica tendente a establecer que el TPI actuó con pasión, prejuicio, parcialidad o error manifiesto, no estamos en condiciones de variar el dictamen apelado. A la luz de ello, este foro apelativo no se encuentra en posición de atender los reclamos que allí se le plantean, por lo que resulta forzoso confirmar el dictamen apelado. Por tanto, concluimos que el TPI no erró en su determinación.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Sentencia*, *confirmamos* el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones