Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| | | |
|---|---|---|
| VINCENT ALEXANDER FRASE<br>Peticionario<br><br>v.<br><br>CHRISTIAN ZESATI LOBATOS<br>Recurrida | TA2025CE00539 | *Certiorari*<br>procedente del<br>Tribunal de<br>Primera de<br>Instancias<br>Sala de Ponce<br><br>Caso Núm.<br>PO2025RF00285<br><br>Sobre:<br>Custodia |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 4 de noviembre de 2025.

Acude ante nosotros el Sr. Vincent Alexander Frazer (señor Alexander Frazer o peticionario), solicitando que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Región Judicial de Ponce, (TPI), el 24 de septiembre de 2025. Como se verá, iniciado el pleito a través de una solicitud por el peticionario para que se le concediera la custodia monoparental de los hijos en común que tiene con la recurrida de epígrafe, intervino una determinación judicial del foro estatal adjudicando que la jurisdicción sobre tal asunto correspondía al lugar donde se encontraba residiendo los menores, no al TPI, por lo que desestimó la causa de acción. Dispuesto esto, se suscitaron varias incidencias procesales, la última de las cuales fue la determinación recurrida, en la que el TPI se negó a revisar la adjudicación sobre jurisdicción aludida.

El peticionario nos solicita que intervengamos en tal curso de acción, ordenando al TPI a considerar nuevamente el asunto.

## I. Recuento Procesal pertinente

Aludiendo solo a los datos procesales que conciernen al asunto ante nuestra consideración, el 27 de marzo de 2025, el señor Alexander Fraser instó una *Solicitud urgente de custodia monoparental prohibición de sacar menores de Puerto Rico* ante el TPI. Afirmó tener dos hijos menores en común con la Sra. Christian Zesati Lobatos, (señora Zesati Lobatos o recurrida), uno de los cuales, M.T., nació en el 2018 en el estado de California, Estados Unidos, mientras que el otro, L.F., nació en Puerto Rico (P.R.) en el 2021. Luego de aducir que tenía la custodia física de dichos menores en Puerto Rico, esgrimió que la madre de estos vivía en California con sus padres, y temía que fuera detenida y deportada por el Departamento de Inmigración Federal. A tenor, solicitó que se le concediera la custodia monoparental de dichos menores, y se emitiera una prohibición de sacarlos de Puerto Rico.

En respuesta, la señora Zesati Lobatos, sin someterse a la jurisdicción del TPI, instó una *Moción de desestimación y orden de entrega de los menores*, aduciendo: que es quien ostenta la custodia de los menores; que estos residen con ella en California y allí estudian; que dicho estado es el que tiene jurisdicción sobre los menores; que estos últimos estaban en P.R. por acuerdo de las partes, pero solo para relacionarse con el padre durante el *spring break*; que el peticionario la engañó al retener a los menores en Puerto Rico; que este tiene problemas de salud mental severos.

Ante lo cual, el peticionario presentó un escrito en oposición a moción de desestimación, que intituló *Ratificación de jurisdicción*, exponiendo las razones por las cuales se debía denegar la moción dispositiva pendiente, y declarar que era el TPI quien ostentaba la jurisdicción para determinar lo relativo a la custodia de los menores, además de reiterar la solicitud para que se prohibiera la salida de estos de P.R.

Vistos los escritos de las partes, el tribunal *a quo* determinó celebrar una vista, con la presencia de las partes, en la que dilucidaría las controversias planteadas, que pautó para el 28 de abril de 2025.

Según se muestra en la *Minuta* donde se recogieron las incidencias de la vista aludida, esta fue celebrada según pautada, con la comparecencia de las partes y sus abogados, además de los menores. En lo que resultó ser una vista argumentativa, (en la referida *Minuta* no se aludió a la presentación de prueba por las partes), el peticionario tuvo oportunidad de elaborar sobre las razones por las cuales, a su juicio, correspondía al TPI asumir la jurisdicción sobre los menores para determinar los asuntos relativos a la custodia. De igual forma, la recurrida tuvo ocasión de argüir sobre lo contrario.

Concluida la participación de las partes, el Tribunal decidió desestimar en corte abierta la causa de acción iniciada por el peticionario. Al decidir así: determinó que carecía de jurisdicción sobre los menores, a causa de que estos no llevaban más de seis meses residiendo en P.R. cuando inició el pleito; añadió que "si el caso fuera a litigarse, sería en la jurisdicción de California"; finalmente, ordenó que se devolviera al *estatus quo* la situación entre las partes respecto a los menores, por tanto, que se entregara estos a la recurrida. La *Sentencia* fue notificada a las partes el 1 de mayo de 2025.

Inconforme, el peticionario solicitó oportuna moción de reconsideración. En su escrito abundó sobre las razones por las cuales, a su juicio, el TPI sí tenía jurisdicción sobre los menores, y por qué dicho foro había *malinterpretado* la legislación federal *Parental Kidnapping Prevention Act*[1] (PKPA) al decidir lo contrario.

Luego, el señor Frazer también instó una *Moción informativa*, dando cuentas al TPI de que la peticionaria había presentado una *Orden de protección en California*, y solicitado allí la custodia de los hijos.

---

[1] 28 U.S.C. sec. 1738A.

Entonces, 19 de mayo de 2025, el foro primario notificó a las partes haber declarado *No Ha Lugar la moción de reconsideración* instada por el peticionario.[2]

Pasados uno meses, el 26 de agosto de 2025, la recurrida instó una *Moción urgente en solicitud de desacato y orden de entrega de los menores a madre custodia*. Informó al TPI que el peticionario había instado otra *Demanda* ante el foro primario estatal, pero en una sala distinta, al que se le asignó el alfanumérico PO2025RF00637, **solicitando que se establecieran las relaciones paterno-filiales**. Continuó indicando que, la juez a cargo de dicho segundo caso, ordenó su consolidación con el primer proceso iniciado, PO2025RF00285, *por duplicidad de asuntos*. Comunicó que, en dicho segundo caso, el peticionario había aludido a un proceso llevado a cabo en California, en el que se determinó que el foro judicial de P.R. era quien ostentaba la jurisdicción sobre los menores. En cualquier caso, la recurrida adujo que: el peticionario se negaba a entregar a los menores; se encontraba residiendo todavía en P.R., sin reparo a seguir aquí hasta tanto el Tribunal ordenara la entrega de los menores; se encontrara en desacato al peticionario por no cumplir la Orden que le requería entregar a los menores.

El 27 de agosto de 2025 fueron presentadas tres mociones por el peticionario ante el TPI: *Moción solicitando se prohíba la salida de los menores fuera de Puerto Rico,* (presentada *pro se,* pues la representación legal del peticionario había renunciado); *Moción asumiendo representación legal,* y; *Moción urgente en solicitud de remedio,* (estas últimas dos, instadas a través de un representante legal nuevo).

En lo que respecta a la última de dichas mociones, el peticionario aseveró haber viajado a California y radicado una moción de emergencia ante el Tribunal de dicho estado para dilucidar la custodia de los menores. Que, como resultado, luego de celebrada la vista correspondiente, fue

---

[2] Entrada Núm. 28 de SUMAC.

emitida una resolución que le resultó favorable, disponiéndose: **1) concederle la custodia de los menores; 2) que los asuntos sobre custodia fueran atendidos en Puerto Rico**. Para este último propósito, incluyó la documentación atinente a la presunta *Orden* expedida por el tribunal en California, en los términos ya descritos, con fecha de 24 de junio de 2025. **Explicó que, por causa de este dictamen, fue que presentó una segunda *Demanda* ante el TPI, bajo el alfanumérico PO2025RF00637, con el propósito de solicitar la custodia de los menores y que se establecieran relaciones paterno-filiales**. Sin embargo, informó que esta segunda demanda fue desestimada sin perjuicio, al Tribunal juzgar que había duplicidad y el asunto debía continuarse bajo el PO2025RF00285. En definitiva, solicitó como remedio que se ordenara que los menores no fueran sacados de PR, y se le entregara la custodia de estos, hasta la conclusión del caso en sus méritos.

El TPI ordenó a la parte recurrida a expresarse sobre la *Moción urgente en solicitud de remedio* descrita en el párrafo que precede.

En cumplimiento, el 29 de agosto de 2025, la recurrida instó *Réplica a moción urgente en solicitud de remedio, moción en cumplimiento de orden y solicitud de custodia monoparental*. En lo pertinente, luego de hacer un recuento procesal de las incidencias en este caso hasta el 26 de agosto de 2025, adujo que en esta fecha logró recuperar la custodia de los menores, con ayuda de la Policía de P.R., para entonces resaltar la alegación sobre presuntos problemas siquiátricos que padece el peticionario. Respecto al proceso que presuntamente se llevó a cabo en California, afirmó desconocerlo, entendiendo que solo había una Minuta, sin Sentencia, habiéndose determinado que PR era el foro con jurisdicción en el caso. A partir de esta expresión, **aseveró que no se había cumplido la reglamentación para validar dicho dictamen**, y que el peticionario continuaba con un patrón de racismo contra ella, por ser de origen mexicana, a pesar de haber nacido en los Estados Unidos. Concluyó

solicitando que: se mantuviera la determinación del TPI del 28 de abril de 2025; **se le concediera la custodia monoparental de los menores** (respecto a esto, presentó una serie de alegaciones para sustentar el pedido); **se fijaran las relaciones paternofiliales**; se encontrara en desacato al peticionario. (Énfasis y subrayado provistos).

El 4 de septiembre de 2025, el peticionario instó *Moción solicitando vista urgente*, afirmando: haber sido privado de la custodia de los menores, a pesar de que el Tribunal de California se la había concedido; que no se le estaba permitiendo relacionarse con los menores; se le había lesionado su debido proceso de ley, al privársele la referida custodia sin la celebración de una vista. Solicitó como remedio que se pautara una vista urgente para atender estos asuntos.

Una vez más, el TPI ordenó a la recurrida que respondiera a esta última moción.

En cumplimiento, el 11 de septiembre de 2025, la recurrida instó *Moción.* Luego de negar las alegaciones de la *Moción solicitando vista urgente* instada por el peticionario, solicitó que: **se le permitiera mantener la custodia monoparental de los menores**; autorizara a regresar a su residencia en California; se refiriera el caso a la Unidad Social para realizar un informe inter-agencial; referir al peticionario a evaluación sicológica.

Como respuesta, el 11 de septiembre de 2025, notificada al próximo día, el foro recurrido emitió una *Resolución Interlocutoria*, dando por cumplida la orden, y determinando lo siguiente: "Véase Sentencia dictada el 28 de abril de 2025".[3]

Ante lo cual, el 15 de septiembre de 2025, el peticionario instó *Moción urgente en reconsideración y oposición a traslado*. Insistió en que el Tribunal de California le había entregado la custodia de los menores, y concluido que el asunto sobre custodia debía ser atendido en P.R.; que el Tribunal en Puerto Rico le había quitado la custodia de los menores, sin

---

[3] Entrada Núm. 54 de SUMAC.

darle el debido proceso de ley. En consecuencia, solicitó que los menores no sean autorizados a salir de P.R., **y se autorizaran unas relaciones paternofiliales urgentes**.

A esta última moción, el 16 de septiembre de 2025, el foro recurrido notificó *Resolución Interlocutoria,* determinando "Véase Sentencia dictada el 28 de abril de 2025".

Una vez más, el 23 de septiembre de 2025, el peticionario acudió ante el TPI, mediante *Moción urgente solicitando vista.* Adujo en esta ocasión que la recurrida presuntamente le había dicho que, *por haber ganado el caso,* se iba con los menores a California en ocho días, a pesar del peticionario ostentar la custodia de dichos menores en California. Por tanto, peticionó que no se autorizara la partida de los menores de P.R. En la misma fecha también radicó una *Moción solicitando relaciones filiales,* afirmando que no se le estaba permitiendo relacionarse con los menores, por lo que solicitaba al Tribunal su intervención.

Finalmente, el 24 de septiembre de 2025, el tribunal *a quo* emitió la *Resolución Interlocutoria* de la cual recurre el peticionario ante nosotros, en la que, con relación a las mociones descritas en el párrafo que precede dispuso: "Nada que proveer", "Véase Sentencia dictada el 28 de abril de 2025".

En desacuerdo, el peticionario acude ante nosotros mediante recurso de *certiorari,* señalando el siguiente error:

> Erró el Honorable Tribunal en declarar No Ha Lugar la solicitud de custodia del apelante al amparo de la Resolución de California y manteniendo la custodia a la apelada al amparo la Sentencia del Tribunal de Primera Instancia en la Sala 405.

Habiéndole concedido término para ello, la parte recurrida también acudió ante nosotros mediante *Oposición a certiorari.*

**II. Exposición de Derecho**

a.

Al considerar los derechos de los padres sobre la custodia de sus hijos, se requiere iniciar citando varias expresiones de peso emitidas por el

Tribunal Supremo Federal en el normativo *Troxel v. Granville*, 530 U.S. 57 (2000). Se dijo allí, por voz de la juez O`Connor, que la Enmienda Decimocuarta dispone que ningún estado privará a una persona de su vida, libertad, o propiedad, sin un debido proceso de ley. Emda. XIV Const. EE. UU. *Esta misma cláusula provee protección contra la interferencia del gobierno con ciertos derechos fundamentales.* ***Entre estos*** *derechos* *fundamentales* ***se encuentran la relación de los padres con sus hijos****. Id.*, pág. 66. (Énfasis y subrayado provistos). Al referirse al interés libertario de los padres cuidar a sus hijos y ostentar su custodia, dicha Corte Suprema Federal afirmó que este, *is perhaps* ***the oldest of the fundamental Liberty interests recognized by this Court****. Id.* (Énfasis provisto).

Cónsono con lo anterior, en *Rexach v. Ramírez*, 162 DPR 130 (2004), nuestro Tribunal Supremo señaló que en el concepto "libertad" de la Enmienda Decimocuarta están incluidos, entre otros, el derecho a casarse, a establecer un hogar **y a criar a los hijos**. El mismo alto foro, reproduciendo una de las expresiones del Tribunal Supremo Federal ya señaladas, también aseveró que ***los menores de edad no son meras criaturas del Estado****; por ende, la relación entre padres e hijos está protegida constitucionalmente y se ha establecido que los padres tienen derecho a decidir sobre el cuidado, la custodia y el control de sus hijos. Id.*, pág. 428. (Énfasis provisto). Ver, también, *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416 (2018).

Aún más, en *Sterzinger v. Ramírez*, 116 DPR 762, 777 (1985), citando al profesor Efraín González Tejera, "Bienestar del menor: señalamientos en torno a la patria potestad, custodia y adopción", en: *Cambios sociales y nuevos enfoques en el derecho de familia*, Centro de Investigaciones Sociales, UPR, 1984, pág. 112, nuestro Tribunal Supremo expresó que *el derecho del padre [o la madre] a la compañía del hijo, aunque sea esporádica,* ***no es mera derivación del bienestar del niño****,* ***sino***

*parte también de derechos fundamentales que nacen de la paternidad [o la maternidad], de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo".* (Énfasis provisto).

Entonces, de lo anterior no resulta sorpresivo que nuestro Tribunal Supremo haya sido enfático al afirmar en que **los casos de familia están permeados del más alto interés público y tienen, además, un carácter *sui géneris*.** *Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998). Es precisamente bajo este trámite *sui generis,* atribuido a los casos sobre alimentos y custodia de menores, que en esta misma Opinión se resolvió que las determinaciones relativas a tales asuntos ***no constituyen propiamente cosa juzgada,*** *ya que están sujetas a revisión judicial, en el tribunal de instancia,* ***si ocurre un cambio en las circunstancias que así lo justifique,*** *siempre, claro está, tomando en consideración los mejores intereses y el bienestar de los menores. Id.* (Énfasis y subrayado provistos).

b.

La *Sección Tercera* del Código Civil de Puerto Rico de 2020, se encarga de los asuntos atinentes a la custodia. El Art. 603 de Código Civil, en particular, 31 LPRA sec. 7282, establece como prioritario que el Tribunal atienda un acuerdo de los progenitores a compartir la custodia del hijo. Sin embargo, **si faltara acuerdo previo entre los progenitores**, *el tribunal* **citará para vista expedita**, **para la adjudicación de la custodia provisional**. *En la vista, el tribunal evaluará la prueba y considerará conceder a las partes la custodia compartida provisional de sus hijos siempre que ello se ajuste al interés óptimo del menor.* (Énfasis provisto). A renglón seguido, el mismo cuerpo citado dispone unos trece (13) criterios que el Tribunal deberá sopesar en toda determinación sobre custodia. Art. 609 del Código Civil, 31 LPRA sec. 7302.

Por su parte, bajo la Sección Tercera del Código Civil, Art. 606, 31 LPRA sec.7285, dispone que la custodia exclusiva puede asignarse a un

solo progenitor, e identifica las causas o momentos procesales para ello. Claro, este artículo necesariamente se debe leer en conjunto con el Art. 603 citado, condiciona a que la determinación sobre custodia sea precedida por una vista evidenciaria, según establecido en nuestro párrafo anterior.

c.

Ahora bien, en cuanto a la jurisdicción de nuestros tribunales en materia de custodia de menores el Tribunal Supremo ha advertido que "[l]a naturaleza de los conflictos sobre la custodia y las relaciones filiales puede generar situaciones en las que varias jurisdicciones tengan contacto con el menor y sus progenitores." *Ortega, Jr. v. Morales Ortega*, 131 DPR 783, 788 (1992), citando a R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada Vol. II.,* San Juan, Ed. EJC, Univ. Inter. P.R., 2002, pág. 1327. En reconocimiento de dicho fenómeno el Congreso de Estados Unidos aprobó el *Parental Kidnapping Prevention Act* (PKPA), 28 USCA sec. 1738A(a), estatuto federal que procura facilitar la ejecución de los decretos judiciales estatales relacionados a custodia y derechos de visita, así como prevenir la competencia y el conflicto interjurisdiccional. *Colón Vega v. Díaz Lebrón*, 211 DPR 548, (2023); *Cancel Rivera v. González Ruiz*, 200 DPR 319, 330 (2018); C*ollazo Dragoni v. Noceda González,* 198 DPR 476 (2017). Como corolario, los tribunales de los estados están obligados a dar entera fe y crédito a los dictámenes de custodia que emiten sus equivalentes. Igual deber es impuesto a los demás estados o jurisdicciones, cuando el decreto es emitido por los tribunales de Puerto Rico. *Id.*

En lo particular, el inciso (a) de la Sec. 1738A del PKAP dispone que, generalmente, la autoridad competente de cada estado debe ejecutar las determinaciones de custodia o derechos de visita de un tribunal emisor conforme a las disposiciones del PKPA. *Id.* Así, si un estado tenía jurisdicción, de forma compatible con el PKPA, los demás estados deberán concederles entera fe y crédito a sus determinaciones. *Id.*; C*ollazo Dragoni v. Noceda González,* supra, a la pág. 483.

En *Marrero Reyes v. García Ramírez*, 105 DPR 90, 99 (1976), se estableció que nuestros tribunales pueden atender casos de custodia en *cualquiera* de las siguientes circunstancias: "(1) cuando se posee jurisdicción *in personam* sobre [alguna de las partes]; (2) cuando el menor está domiciliado en Puerto Rico; (3) cuando el menor está físicamente presente o tiene su residencia habitual en Puerto Rico; y (4) cuando el menor es ciudadano o nacional de Puerto Rico". Por consiguiente, ***vemos que el ordenamiento puertorriqueño es abarcador con respecto a la jurisdicción de nuestros tribunales en casos de custodia de menores***. *Id.* (Énfasis provisto).

Del estado poseer jurisdicción sobre el menor, conforme a la ley de dicho estado, entonces se ha de examinar si el decreto resulta compatible con las condiciones establecidas del PKPA. El inciso (c) del referido estatuto dispone, 28 USCA sec. 1783A(c), que dispone lo que sigue:

(c) Una determinación de custodia o de derecho de visita hecha por un tribunal de un estado es consistente con los requisitos de esta sección solamente si:

1) dicho tribunal tiene jurisdicción **bajo las leyes de su estado**; y
2) se cumple con una de las siguientes condiciones:

(A) Ese estado (i) es el estado de residencia del menor a la fecha en que comenzaron los procedimientos, **o** (ii) ha sido el estado de residencia del menor seis meses antes de la fecha en que comenzaron los procedimientos y el menor se encuentra fuera del estado porque ha sido trasladado o retenido por una de las partes o por otras razones, y una de las partes aún reside en el estado que emitió el decreto;

(B) (i) surge que ningún otro estado tiene jurisdicción bajo el párrafo (A), y (ii) para el mejor bienestar del menor el tribunal de dicho estado asume jurisdicción debido a que (I) el menor y sus padres, o el menor y al menos uno de los litigantes, tiene contactos significativos con el estado, más allá de la mera presencia física en el mismo; y (II) está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes o futuras del menor;

(C) el menor está físicamente presente en ese estado, y (i) ha sido abandonado, o (ii) existe una emergencia que requiera su protección porque el niño, un hermano o uno de sus padres, ha recibido amenazas o ha estado expuesto a maltrato o abuso;

(D) (i) surge que no hay otro estado con jurisdicción bajo los párrafos (A), (B), (C) o (E), u otro estado ha declinado ejercer jurisdicción bajo el fundamento de que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar la

custodia del menor, y (ii) es para el mejor bienestar del menor que ese tribunal asuma jurisdicción; o

(E) el tribunal tiene jurisdicción continua conforme al inciso (d) de esta sección. (Traducción nuestra).

No obstante, la ley reconoce a los tribunales autoridad para modificar una determinación de custodia emitida originalmente por otro estado, siempre y cuando el estado que pretende modificar el decreto ostente jurisdicción para tomar determinaciones de custodia sobre el menor; y el foro original haya perdido jurisdicción para modificar el decreto, o haya renunciado a ésta. 28 U.S.C.A. sec. 1738A(f) y (h); *Santiago v. Kabuka*, supra, pág. 537.

d.

En nuestro ordenamiento jurídico las sentencias y órdenes dictadas por los tribunales de un estado de la Unión o país extranjero **no operan en forma directa o *ex proprio vigore*.** *Colón Vega v. Díaz Lebrón*, supra; Rodríguez Contreras v. E.L.A., 183 DPR 505, 516 (2011). (Énfasis provisto). Antes de que estas sentencias se puedan ejecutar o en alguna otra forma hacer efectivas, **corresponde que nuestros tribunales locales las reconozcan y validen mediante el procedimiento de exequátur.** *Colón Vega v. Díaz Lebrón*, supra; *Mench v. Mangual*, 161 DPR 851, 856 (2004). (Énfasis provisto). Véase, además, Regla 55.1 de Procedimiento Civil, 32 LPRA Ap. V. Por otro lado, **en la situación particular en que se podrían ver afectados los intereses de menores, es necesario notificar al Procurador de Asuntos de Familia.** Regla 55.4 de Procedimiento Civil, supra.

Sin embargo, **en el contexto específico de sentencias dictadas por los tribunales estatales de Estados Unidos el proceso es más sencillo, pues sirve para cumplir con las disposiciones de la Cláusula de entera fe y crédito**, Art. IV, Sec. 1, Const. EE. UU., LPRA, Tomo 1; *Colón Vega v. Díaz Lebrón*, supra; *Gulf Petroleum et al. v. Camioneros*, supra, pág. 968. (Énfasis provisto). En esas circunstancias, luego de resolver planteamientos

procesales, el tribunal deberá comprobar que un foro con jurisdicción dictó la sentencia, mediante el debido proceso de ley, y que esta no se obtuvo por fraude. Regla 55.5 de Procedimiento Civil, supra.

Si estas exigencias se cumplen, "los tribunales de Puerto Rico tendrán que concederles entera fe y crédito a las sentencias dictadas en jurisdicciones estatales de los Estados Unidos independientemente de lo que sean la política pública y las disposiciones legales de Puerto Rico sobre la materia o asunto de que se trate..." *Colón Vega v. Díaz Lebrón*, supra. Entiéndase que, cumplimentados los requisitos del exequátur, los tribunales locales están impedidos de cuestionar sustantivamente las sentencias que provienen de un estado, territorio o posesión de Estados Unidos. *Id.* En ese esquema, el ámbito de revisión del tribunal local no da cabida a que las partes relitiguen en sus méritos una controversia que ya fue adjudicada por otro tribunal. *Id.* Tanto es así, que *la parte promovida no derrota una petición de exequátur descansando simplemente en aseveraciones generales, sin presentar prueba alguna. Mench v. Mangual,* supra, págs. 862-863.

**III.  Aplicación del derecho a los hechos**

a.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, nos habilita para intervenir con las resoluciones interlocutorias provenientes del TPI, *en casos de relaciones de familia.* Además, la Regla 40(G) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Emndas. Reglamento TA*, 2025 TSPR 42., __, 215 DPR __ (2025), identifica como uno de los criterios para determinar si ejercemos nuestra discreción al expedir el auto de *certiorari,* si ello evitaría *un fracaso de la justicia.*

Habiendo examinado los asuntos ante nuestra consideración determinamos que: 1) estamos ante un caso sobre relaciones de familia, (custodia de los menores) y; 2) se requiere nuestra intervención, visto el periplo procesal al que han estado sometidas las partes y unos menores,

sin obtener al momento dirección acerca de las relaciones paterno-filiales, lo que podría suponer un fracaso de la justicia. Es decir, el Tribunal debe evitar a toda costa la indeseable prolongación de un asunto que atenta contra los derechos fundamentales de los padres, y el óptimo bienestar de los menores.

b.

Es necesario iniciar reiterando que tanto la Corte Suprema Federal, como nuestro Tribunal Supremo, han identificado el derecho de los padres a relacionarse con sus hijos como uno fundamental, íntimamente atado al debido proceso de ley. *Troxel v. Granville*, supra, y *Sterzinger v. Ramírez*, supra, respectivamente. Valga repetir la cita de esta última Opinión en lo referente a que, *el derecho del padre [o la madre] a la compañía del hijo, aunque sea esporádica,* ***no es mera derivación del bienestar del niño****, **sino parte también de derechos fundamentales que nacen de la paternidad [o la maternidad]***, *de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo*". *Id*. A lo que se acompaña la afirmación de que los casos de familia están permeados *del más alto interés público. Figueroa v. Del Rosario*, supra.

Dicho lo anterior, reconocemos que en el caso ante nuestra consideración se han planteado asuntos relativos a qué foro ostenta la jurisdicción para decidir controversias sobre la custodia de los menores, controversia que resulta de umbral. Sin embargo, repetimos, no es dable mantener a las partes, y a los menores, en un limbo jurídico respecto a las relaciones paternofiliales.

c.

Según quedó visto del tracto procesal, solicitada por el peticionario la custodia de los menores en marzo de 2025, a lo que la recurrida se opuso, el TPI celebró vista *argumentativa* que derivó en una *Sentencia* desestimatoria, por falta de jurisdicción sobre los menores, de 1 de mayo de 2025. Sobre la referida vista, sépase que, a ese momento **no** existía

propiamente un conflicto interjurisdiccional, pues, según el expediente ante nosotros, las partes no habían planteado antes la controversia sobre custodia en alguna otra jurisdicción, siendo el Tribunal de Puerto Rico la primera en considerarla. Sobre ello, nuestro Tribunal Supremo ha indicado sin ambages que, *cuando no está presente ningún conflicto jurisdiccional, no aplican las prohibiciones del PKPA. Collazo Dragoni v. Noceda González,* supra, pág. 490. Por tanto, lo que procedía en aquel momento era considerar si el TPI ostentaba jurisdicción sobre los menores, a partir de los requisitos de nuestras leyes estatales, bajo el Código Civil de 2020, tomando como ruta ilustrativa de dicho proceso la marcada en *Marrero Reyes v. García Ramírez,* 105 DPR 90 (1976), para lo cual se requería el desfile de prueba, más allá de meras argumentaciones.

En cualquier caso, lo cierto es que el TPI desestimó esta primera solicitud de custodia instada por el peticionario, concluyendo que, "si el caso se litigase, **correspondería hacerlo en la jurisdicción de California**". (Énfasis provisto).

Cónsono con la oración que precede, presuntamente[4], un tribunal en California intervino en el asunto y: ordenó entregarle la custodia de los menores al peticionario; dispuso para que los menores retornaran a P.R.; **decidió que P.R. era la jurisdicción apropiada para adjudicar los asuntos sobre custodia**.

Sobre lo anterior cabe señalar que, **del peticionario lograr convalidar dicha determinación del estado de California en nuestra jurisdicción**, entonces sería necesario concluir **que aconteció un nuevo estado de los procesos posterior a la Sentencia emitida por el TPI el 1 de mayo de 2025, que requería acción por nuestros tribunales, de serla requerida por las partes**. Claro, según citamos de *Colón Vega v. Díaz Lebrón,* supra, en nuestro ordenamiento jurídico "las sentencias y órdenes dictadas por los tribunales de un estado de la Unión o país extranjero no

---

[4] Utilizamos el adverbio *presuntamente,* pues el dictamen no ha sido validado en P.R.

operan en forma directa o *ex propio vigore*". "Aunque en el contexto específico de las sentencias dictadas por los tribunales estatales de los Estados Unidos el proceso es más sencillo, de todos modos, corresponde a nuestros tribunales su validación". *Id.*

Lo cierto es que, según se muestra en el tracto procesal, una vez el peticionario obtuvo el dictamen de California aludido, en efecto, solicitó nuevamente la intervención de nuestros tribunales para establecer las relaciones paternofiliales, con la radicación de otra demanda sobre custodia, a cuyo caso se le asignó el alfanumérico PO2025RF00637. Sin embargo, mediante *Sentencia Final* de 25 de agosto de 205, el foro estatal al cual se le asignó esta segunda causa de acción decidió desestimarla, *"por* duplicidad", y dispuso que "**todos los asuntos en el presente caso deben continuarse en el caso PO2025RF00285"**. Es decir, a pesar de que el caso bajo el alfanumérico *PO2025RF00285* había sido desestimado, parece ser que el foro primario juzgó como *mejor vía* continuar la dilucidación sobre las relaciones paternofiliales a través de dicho caso, en lugar de adjudicar el que tenía activo ante sí. En cualquier caso, lo cierto es que, en el PO2025RF00637, el TPI nada dispuso, ni adjudicó, sobre los méritos de la nueva petición de custodia, ni recibió prueba dirigida a validar el presunto dictamen proveniente de California.

Ante lo cual, el peticionario promovió al menos cuatro mociones seguidas ante el TPI, todas bajo el proceso identificado con el alfanumérico *PO2025RF00285,* (según así se determinó en la *Sentencia Parcial* de 25 de agosto de 2025), suplicando: el establecimiento de las relaciones paternofiliales; la prohibición de que la recurrida se llevara a los menores fuera de la jurisdicción; que se tomara en consideración el dictamen emitido en California.

Merece destacar que, aunque la recurrida se opuso mediante mociones a las referidas peticiones del peticionario, lo cierto es que, en el mismo proceso bajo el *PO2025RF00285,* está **expresamente plasmó que**

**los menores aman a ambos padres, no tenía objeción en que se le adjudicara la custodia monoparental de los menores, y se fijara las relaciones paternofiliales correspondientes,** luego de someter al peticionario a una evaluación siquiátrica.

Sin embargo, como respuesta a las solicitudes del peticionario, una y otra vez el foro recurrido dispuso de las solicitudes del peticionario refiriéndolo a lo decidido en su *Sentencia* de abril de 2025, disponiendo que no tenía nada que proveer.

Incidió al así obrar, las circunstancias procesales atendidas y resueltas mediante la Sentencia de abril de 2025 cambiaron con posterioridad, dando lugar a una nueva controversia sobre la custodia de los menores que merecía ser adjudicada. En palabras del Tribunal Supremo, "las determinaciones de alimentos y de custodia de menores no constituyen propiamente cosa juzgada, ya que están sujetas a revisión judicial, en el tribunal de instancia, si ocurre un cambio en las circunstancias que así lo justifique, siempre, claro está, tomando en consideración los mejores intereses y el bienestar de los menores". *Figueroa v. Del Rosario*, supra, pág. 128. A través de la Sentencia de abril de 2025, el TPI resolvió la controversia que se le presentó según las circunstancias existentes en dicho momento, sin embargo, tales circunstancias cambiaron cuando, presuntamente, el foro al que había referido para asumir la jurisdicción sobre los menores, California, la renunció, creando un vacío legal en torno a la custodia de dichos menores. Ver, *Figueroa v. Del Rosario*, supra, pág. 129.

Por tanto, como primer paso, es necesario que el TPI conceda una vista evidenciaria en la que le permita al peticionario presentar prueba para validar el presunto dictamen emitido por California, y que la recurrida tenga oportunidad de rebatirla, de así esta decidirlo. *Colón Vega v. Díaz Lebrón*, supra. A partir de lo cual, el foro primario habrá de reevaluar nuevamente su jurisdicción para con los menores, y el establecimiento de

las relaciones paternofiliales, tomando en consideración los hechos con los que cuenta en estos momentos, según la prueba que presenten las partes, rigiéndose por el valor fundamental de los padres a disfrutar de relaciones paternofiliales, y el mejor bienestar de los menores.

Según advertimos, las partes, ni los menores, pueden permanecer más tiempo en un estado de indefinición respecto a las relaciones paternofiliales, a la espera de que algún foro se decida por asumir la jurisdicción sobre el asunto en algún momento incierto, máxime cuando no aparenta que hubiese objeción de la recurrida a que el foro local intervenga en el asunto, y manifestara que dichos menores aman a sus padres. El mejor bienestar de los menores llama a la acción judicial, máxime cuando no hay aparente conflicto interjurisdiccional.

**IV. Parte dispositiva**

Por los fundamentos que anteceden, expedimos el auto de *certiorari*, revocamos la determinación recurrida, y ordenamos se cumpla con el proceso aquí descrito.

Notifíquese inmediatamente.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones