HELEN MENCH FLECK, recurrida, *v.* FÉLIX L. MANGUAL GONZÁLEZ, peticionario.

*Número:* CC-2002-459 *Resuelto:* 25 de mayo de 2004

*Anette M. Rodríguez Rodríguez*, abogada de la parte peticionaria; *Pilar M. Pérez Rojas*, abogada de la parte recurrida.

LA JUEZA PRESIDENTA SEÑORA NAVEIRA MERLY emitió la opinión del Tribunal.

En esta ocasión nos corresponde atender un delicado aspecto del trámite procesal seguido ante el Tribunal de Primera Instancia, en un procedimiento de exequátur, para determinar si el antiguo Tribunal de Circuito de Apelaciones de Puerto Rico (Tribunal de Apelaciones) actuó correctamente al concederle entera fe y crédito a una sentencia que emitió un tribunal de la República Federal de Alemania en un pleito de divorcio y alimentos. Examinemos los hechos que dieron lugar al recurso de autos, los cuales no están en controversia.

I

El 26 de octubre de 1979 el Sr. Félix L. Mangual González y la Sra. Helen Mench Fleck contrajeron matrimonio en la República Federal de Alemania, donde éste servía como militar en las Fuerzas Armadas de Estados Unidos. Eventualmente, las partes se trasladaron a vivir a Juana Díaz, Puerto Rico, donde procrearon sus dos hijos, Félix Fernando y José Félix Mangual Mench. Para octubre de 1987 las partes decidieron separarse.

Así las cosas, la señora Mench Fleck se trasladó a su tierra natal, Alemania, donde en mayo de 1988 presentó, ante un Juzgado Familiar de la República Federal de Alemania (tribunal alemán), una demanda de divorcio en contra del señor Mangual González. Posteriormente, solicitó que se fijara una pensión alimentaria para ella y los menores de edad. Luego de varios incidentes procesales, en enero de 1989 el tribunal alemán dictó sentencia en rebeldía, decretó roto y disuelto el vínculo matrimonial que unía a las partes y le concedió a la señora Mench Fleck las pensiones alimentarias solicitadas, ascendentes a la cantidad

de 1,200 marcos (equivalente a $659.52) como pensión de ex cónyuge y 356 marcos (equivalente a $200.60) como pensión alimentaria para cada uno de sus hijos menores de edad.

Ante el alegado incumplimiento del señor Mangual González con las obligaciones que le impuso el tribunal alemán, la señora Mench Fleck se trasladó a Puerto Rico e instó una demanda en cobro de pensiones alimentarias. Asimismo, presentó una "Petición de Exequátur" donde solicitó se le diera entera fe y crédito a la sentencia de alimentos que emitió el tribunal alemán. Acompañó su petición con una serie de documentos, entre los que se encontraba: Requerimiento de Diligenciamiento de Documentos Judiciales o Extrajudiciales en el Extranjero;[1] Carta Informativa del Juzgado Local de ULM (Alemania) a la Sra. Helen Mangual González de 27 de febrero de 1997 (redactada en alemán); Carta Informativa del Juzgado Local de ULM (Alemania) a la Sra. Helen Mangual González[2] de 27 de febrero de 1997 (redactada en español); declaración jurada de la Sra. Helen Mench Fleck. En oposición, el señor Mangual González sostuvo que: (1) previo a dictar sentencia, el tribunal alemán no había adquirido jurisdicción sobre su persona, puesto que el emplazamiento no se hizo conforme a derecho, y (2) la señora Mench Fleck no tenía legitimación activa para instar un litigio en Puerto Rico, ya que era residente de Alemania.

Atendidos los planteamientos de las partes, y en lo relativo al asunto que nos ocupa, el Tribunal de Primera Instancia emitió una resolución mediante la que desestimó la petición de exequátur. Resolvió ese foro que, tal como lo indicó el señor Mangual González, la señora Mench Fleck

---

[1] "Request for Service Abroad of Judicial or Extrajudicial Documents", Office of International Justice Assistance, Department of Justice, Washington, D.C. 20530.

[2] Los apellidos Mangual González fueron los que la Sra. Helen Mench Fleck utilizó mientras estuvo casada con el Sr. Félix L. Mangual González.

no cumplió con su obligación de demostrarle que el tribunal había adquirido jurisdicción sobre la persona de Mangual González, requisito indispensable para poderle dar entera fe y crédito a la sentencia que emitió ese foro.

Insatisfecha, la señora Mench Fleck recurrió al Tribunal de Apelaciones. En su recurso sostuvo que incidió el tribunal a quo al determinar que ella no cumplió con su obligación de demostrar que el tribunal alemán había adquirido jurisdicción sobre la persona del señor Mangual González. El 9 de mayo de 2002 el foro apelativo dictó una sentencia para revocar el dictamen que emitió el foro primario. Determinó ese foro que la notificación al señor Mangual González cumplió con el Convenio de la Haya en materia de Derecho Internacional Privado sobre el diligenciamiento de documentos judiciales y extrajudiciales en asuntos civiles y comerciales suscrito por Estados Unidos de Norteamérica. Sostuvo, además, que el emplazamiento se diligenció conforme al ordenamiento procesal de Estados Unidos, en particular con la Regla 4(e)(2) de Procedimiento Civil federal, 28 U.S.C.A., y que, por ende, el tribunal alemán, al momento de dictar sentencia, tenía jurisdicción sobre la persona del señor Mangual González.

Inconforme, el 14 de junio de 2002 el señor Mangual González acudió ante nos mediante un recurso de *certiorari*. En esencia, planteó que erró el Tribunal de Apelaciones al determinar que la señora Mench Fleck demostró ante el foro de instancia que el tribunal alemán adquirió jurisdicción sobre él al emplazarlo, según lo establecido en la Regla 4(e)(2) de Procedimiento Civil federal, *supra*. El 12 de julio de 2002 decidimos expedir el auto solicitado. Oportunamente, la señora Mench Fleck presentó su alegato en oposición. Contando con el beneficio de las comparecencias de ambas partes, resolvemos.

## II

■ Como es sabido, por razón de su propia esencia, el principio de soberanía conduce al rechazo de la efectividad automática de las sentencias y órdenes que dictan los tribunales de un estado o país extranjero. Cónsono con este principio, el derecho público de la mayor parte de las naciones del mundo civilizado requiere que los tribunales del foro donde se pretenden hacer efectivas sentencias extranjeras las reconozcan y convaliden. El procedimiento para ese reconocimiento y convalidación ha sido tradicionalmente denominado como "exequátur". *Márquez Estrella, Ex parte*, 128 D.P.R. 243, 247 (1991).

■ El propósito de la acción de reconocimiento o de exequátur es garantizar el debido proceso de ley a las partes afectadas por la ejecutoria extranjera y concederles una oportunidad razonable para presentar sus defensas y ser escuchadas. Empero, el tribunal ante el cual se practique ese procedimiento no podrá entrar a considerar los méritos de una sentencia extranjera, si no que se limitará, luego de resolver los planteamientos de índole procesal que sean pertinentes, a determinar si la sentencia extranjera cumplió con todas las normas de Derecho Internacional Privado. *Ef. Litográficos v. Nat. Paper & Type Co.*, 112 D.P.R. 389, 395–396 (1982).

■ A tales efectos, en *Ef. Litográficos v. Nat. Paper & Type Co.*, supra, enunciamos las normas de Derecho Internacional Privado que regirán, en ausencia de tratado o legislación especial, el reconocimiento y la convalidación de sentencias extranjeras en Puerto Rico. Estas normas, las cuales se ratificaron posteriormente en *Silva Oliveras v. Dúran Rodríguez*, 119 D.P.R. 254, 259 (1987), y en *Márquez Estrella, Ex Parte*, supra, pág. 250, se pueden resumir de la manera siguiente:

1. *Que la sentencia extranjera haya sido dictada por un tri-*

*bunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma.*

2. Que la sentencia haya sido dictada por un tribunal competente.

3. Que se haya observado el debido proceso de ley por el tribunal que emitió la sentencia.

4. Que el sistema bajo el cual se dictó la sentencia se distinga por su imparcialidad y ausencia de prejuicio contra los extranjeros.

5. Que la sentencia dictada en el extranjero no sea contraria al orden público del foro requerido o local, que no sea contraria a los principios básicos de la justicia y que no haya sido obtenida mediante fraude. (Énfasis suplido.)

Es precisamente el primero de estos requisitos, el cual requiere que la sentencia extranjera la haya dictado un tribunal con jurisdicción sobre la persona, el que el señor Mangual González alega el tribunal alemán no cumplió previo a dictar sentencia en su contra. Específicamente, señala el señor Mangual González que no se le notificó correctamente del procedimiento que se seguía en su contra en los tribunales alemanes, al alegadamente emplazarlo en una dirección postal que no constituía su residencia habitual.[3] Sus argumentos no nos convencen. Deficiencias en la manera en que éste respondió a las alegaciones de la señora Mench Fleck, nos llevan a esa conclusión. Veamos.

## III

◼ Tratándose aquí de un pleito originado en el extranjero, es menester señalar que por ser Estados Unidos una entidad que suscribe encargada de dar cumplimiento al Convenio de la Haya, y teniendo esa entidad la autoridad de regular las relaciones internacionales, es ésta la

---

[3] Para propósitos de la discusión, el emplazamiento se diligenció el 29 de noviembre de 1988 en la dirección siguiente: MC 02 Box 9719 Bo. Postillo, Juana Díaz, P.R. 00665-9614, y se le entregó a la Sra. Ángela González, madre del peticionario.

fuente en derecho a la cual debemos acudir para determinar la adecuada y correcta notificación al apelado. En lo referente a la notificación de reclamaciones judiciales entre los países signatarios, el Convenio de la Haya(⁴) establece lo siguiente:

ARTÍCULO 2
Cada Estado contratante designará una autoridad central que asuma, conforme a los artículos 3 al 6, la función de recibir las peticiones de notificación o traslado procedentes de otro Estado contratante y darles curso ulterior.
*Cada Estado organizará la autoridad central de conformidad a su propia ley.*

. . . . . . . .

ARTÍCULO 5
*La autoridad central del Estado requerido procederá u ordenará proceder a la notificación o traslado del documento:*
*(a) ya según las formas prescritas por la legislación del Estado requerido para la notificación o traslado de los documentos otorgados en este país y que se destinen a personas que se encuentren en su territorio,* o
(b) ya según la forma particular que solicite el requirente, siempre que no resulte incompatible con la ley del Estado requerido.(⁵) (Traducción y énfasis nuestros.)

■ En conformidad con lo anterior, la notificación a

---

(⁴) *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Belgie, Maarten Kluwer's Internationale Uitgeversonderneming, 1983, págs. 3–4.

(⁵) La versión original de los Arts. 2 y 5 del Convenio de la Haya disponen de la manera siguiente:
"Article 2
"Each Contracting State shall designate a Central Authority which will undertake to receive request for service coming from other contracting States and to proceed in conformity with the provisions of articles 3 to 6.
*"Each State shall organise the Central Authority with its own law.*

. . . . . . . .

"Article 5
*"The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either—*
*"(a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory,* or
"(b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed [who accepts it voluntarily]." (Énfasis suplido.) Íd.

un extranjero de un pleito en su contra, según establecido en el Convenio de la Haya, requiere que el país donde se insta la reclamación remita una solicitud de notificación al país de residencia del demandado para que éste notifique a su ciudadano, entre otros extremos, que se ha instado un pleito en su contra. El diligenciamiento de tal notificación estará a cargo del país de residencia del demandado que, en lo que a Puerto Rico respecta, es el Departamento de Justicia federal y se hará conforme a las leyes de dicho país.

A tales efectos, huelga decir que dentro del ámbito federal la norma que regula lo adecuado y correcto del emplazamiento, como mecanismo constitucional para adquirir jurisdicción sobre la persona, es la Regla 4(e)(2) de Procedimiento Civil federal, *supra*, que dispone, en su parte pertinente:

> (e) Service Upon Individuals Within a Judicial District of the United States.
> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
>
> . . . . . . . . .
>
> (2) *by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.* (Énfasis suplido.)

Como se puede apreciar, la Regla 4(e)(2) de Procedimiento Civil federal, *supra*, es clara. Para que el diligenciamiento de un emplazamiento subsista en esa esfera judicial, se debe realizar en una de dos formas, a saber: (1) ya sea personalmente al demandado, o (2) mediante la entrega del emplazamiento en el domicilio de éste a una persona de edad adecuada y con suficiente discernimiento (*a person of suitable age and discretion*).

En el presente caso, y conforme lo establece el Convenio de la Haya, así como la normativa procesal federal, la Corte de la República Federal de Alemania remitió al Departamento de Justicia federal una solicitud de emplazamiento para el señor Mangual González, en vista de que éste era la parte demandada ante ese tribunal. El emplazamiento del señor Mangual González lo recibió y diligenció el Departamento de Justicia federal, Oficina de Litigación Extranjera, División Civil, a través del U.S. Marshall de San Juan el 29 de noviembre de 1988. *Del certificado de ese emplazamiento se deduce que se diligenció en la fecha indicada (29 de noviembre de 1988), en la siguiente dirección: "MC 02 Box 9719 Bo. Postillo, Juana Díaz, PR 00665-9614" y que los documentos se le entregaron a la Sra. Ángela González, madre del peticionario. Tal hecho lo corroboró el foro de instancia.*(⁶) *Con la Petición de Exequátur se acompañó como prueba documental, según ya mencionamos, el Requerimiento de Diligenciamiento de Documentos Judiciales o Extrajudiciales en el Extranjero; las Cartas Informativas del Juzgado Local de ULM (Alemania) a la Sra. Helen Mangual González y una declaración jurada firmada por ésta.*

Dentro del marco jurídico antes enunciado, y en lo referente al alegado diligenciamiento del emplazamiento ob-

---

(⁶) Sobre este particular, la sentencia que emitió el Tribunal de Primera Instancia establece: "La parte demandante alegó en el expositivo seis (6) de la petición de Exequatur [sic] Enmendada que 'para el 29 de noviembre de 1988, fue emplazado el Sr. Félix Luis Mangual González mediante el Departamento de Justicia Federal, Oficina de Litigación Extranjera, División Civil (Department of Justice, Office of Foreign Litigation, Civil Division) a través del US Marshall, de San Juan, Puerto Rico con todas las peticiones presentadas en su contra y se le informaba que tenía semanas para presentar sus alegaciones, fecha de la vista en el caso y un listado de abogados en Alemania que podrían representarlo. Todo esto en cumplimiento de la Convención de la Haya de 1965, sobre la notificación legal de Actas Judiciales y Extrajudiciales en el extranjero'. *Durante la vista del caso nos llamó particularmente la atención el hecho de que la notificación que refleja el Exhibit 1 presentada por la parte demandante no se hizo a la parte demandada Sr. Félix Luis Mangual González y sí a su señora madre, doña Ángela González, el 29 de noviembre de 1998, por el US Marshall.* Alegó la parte demandada que se debió notificar personalmente al demandado como lo solicitó la Corte Local VCM/DONAN, Alemania." (Énfasis suplido.) Véase Record of Service of Foreign Judicial Document.

jeto de litigio en una dirección postal, aspecto que el señor Mangual González cuestiona, el foro apelado determinó que se diligenció correctamente, ya que de la certificación del diligenciamiento aparece que se dejó con la madre del peticionario en la dirección postal indicada en el documento y que, por lo tanto, se cumplió con la regla federal sobre emplazamientos al éste enterarse que existía un pleito en su contra. Entendió el foro de instancia que la forma de diligenciamiento fue suficiente para que el tribunal extranjero adquiriese jurisdicción sobre el señor Mangual González y pudiese dictar sentencia en su contra. Nada impedía que a través del procedimiento de exequátur el Tribunal de Primera Instancia le reconociese validez a la sentencia que dictó el tribunal extranjero. Máxime, cuando en su alegato ante ese foro el señor Mangual González acepta que el *"emplazamiento se diligenció a la madre del apelado y no personalmente a [é]ste".*([7])

Un examen objetivo de la prueba aportada durante el juicio nos mueve a coincidir con el foro apelativo intermedio en que ésta es suficiente en derecho para determinar que el señor Mangual González fue emplazado correctamente. El procedimiento que se siguió para diligenciar el emplazamiento cumplió con los requisitos del Convenio de la Haya y con lo dispuesto en la normativa procesal federal. Ese emplazamiento —que efectuaron los alguaciles federales en la persona de la madre del peticionario, Sra. Ángela González, bajo la firma de los mencionados funcionarios públicos— lleva consigo una *presunción de corrección y legalidad*([8]) que el señor Mangual González no logró derrotar.

Aun cuando el señor Mangual González presentó su

---

([7]) Véase sentencia emitida por el Tribunal de Apelaciones de 9 de mayo de 2002, pág. 14.

([8]) Véase Regla 79(C) de Evidencia, 32 L.P.R.A. Ap. IV, la cual dispone:

"No se requerirá evidencia extrínseca de autenticación como condición previa a la admisibilidad de

oposición a la Petición de Exequátur, por entender que no fue emplazado conforme a derecho,([9]) éste no presentó prueba o controvirtió de forma alguna las alegaciones que expuso y fundamentó la señora Mench Fleck. Se limitó a *alegar* que el tribunal no tenía jurisdicción sobre su persona. No presentó prueba alguna para avalar esta alegación. No surge del expediente documento alguno que apoye la determinación de que la madre del señor Mangual González, la Sra. Ángela González, negara haber sido emplazada.

La parte promovida en la Petición de Exequátur no podía descansar simplemente en aseveraciones generales. Venía obligada a demostrar que tenía prueba para substanciarlas. El señor Mangual González no descargó

---

"(B) *Documentos públicos bajo sello oficial.*— Documentos bajo sello si éste aparenta ser el sello oficial de:

"(1) El Estado Libre Asociado de Puerto Rico, o

"(2) los Estados Unidos de América, o

"(3) un estado, territorio o posesión de los Estados Unidos de América, o

"(4) un departamento, agencia pública, corporación pública o funcionario público de cualquiera de las entidades enumeradas en los incisos (1), (2) y (3) anteriores.

"Dichos documentos deben estar firmados por la persona que aparenta ser la que los otorga.

"(C) *Documentos públicos suscritos por funcionarios públicos.*— Documentos, aunque no estén bajo sello, presuntamente firmados en su capacidad oficial por un funcionario público de cualquiera de las entidades enumeradas en las cláusulas (1), (2) y (3) del inciso (B) de esta regla, siempre que tales documentos sean acompañados por una certificación bajo sello expedida por funcionario público competente dando fe de que la firma es genuina y es la de un funcionario con capacidad oficial para suscribir los documentos." (Énfasis suplido.)

([9]) Según el señor Mangual González, de una lectura del certificado de diligenciamiento del emplazamiento no se puede establecer que los documentos realmente se diligenciaron en la persona de su madre, la Sra. Ángela González. Entiende éste que de ese documento lo único que se puede presumir es que los documentos se dejaron en el apartado postal.

*Cabe señalar que la apreciación del señor Mangual González es incorrecta. La dirección postal incluida en el emplazamiento tenía el propósito de identificar físicamente el lugar donde residía éste, de manera que con algún tipo de gestión adicional se identificase su residencia y se le emplazase, tal como se hizo, en la persona de su señora madre. Tomamos conocimiento judicial de que en este tipo de dirección (MC 02 Box 9719 Bo. Postillo, Juana Díaz, PR 00665-9614), es costumbre organizar los buzones o casillas de correo en hileras llamadas buzones, también bancos, donde se agrupan todos en un área separada exclusivamente para ellos, muy cerca de la residencia donde habita el dueño.*

adecuadamente su obligación procesal para derrotar la Petición de Exequátur. El error señalado no se cometió.

## IV

Por los fundamentos expuestos en la opinión que antecede, *se dicta una sentencia que confirma el dictamen emitido por el Tribunal de Circuito de Apelaciones. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López concurrió el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri no intervino.