ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| GLOBAL INVESTMENT STRATEGY UK LIMITED<br><br>Apelante<br><br>v.<br><br>FALCON FINANCIAL LLC Y OTROS<br><br>Apelados | TA2025AP00564 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV01756<br><br>Sobre: *Exequatur* |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Campos Pérez, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de enero de 2026.

**I.**

Global Investment Strategy UK Limited (Global)[1] comparece y nos solicita la revisión parcial de la *Resolución* emitida el 24 de junio de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[2] En el aludido pronunciamiento, el TPI convalidó mediante *exequatur* un dictamen judicial extranjero, por virtud del cual se condenó a Falcon Financial LLC (Falcon) a satisfacer una suma dineraria a favor de Global. La *Sentencia* fue emitida en el Reino Unido el 19 de diciembre de 2024, por el *County Court at Central London,* en el caso *Global Investment Strategy UK Limited, Claimant v. Falcon Financial LLC, Defendant.* La sentencia convalidada reza como sigue:[3]

> Before District Judge Rippon sitting at the County Court at Central London, Thomas More Building, Royal Courts Of Justice, Strand, London, WC2A 2LL.
>
> UPON hearing Mr. Levy, counsel for the Claimant, the Defendant not attending and not being represented

---

[1] Surge de los autos que el compareciente satisfizo la fianza que exige nuestro ordenamiento procesal civil; véanse, entradas 5-8 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[2] Entrada 16 en el SUMAC.

[3] Entrada 2 en el SUMAC.

AND UPON the Claimant's application for judgment in default of an acknowledgement of service

AND UPON the court being given certificates of service of the claim on the Defendant pursuant to the permission given of HHJ Dight CBE to serve out of the jurisdiction

AND UPON the court noting that from the court electronic file no acknowledgment of service or defence had been received from the Defendant

**IT IS ORDERED THAT:**

1. Judgment for the Claimant.
2. The Defendant to pay the Claimant damages in the amount of £200,000.
3. The Defendant to pay the Claimant's costs of these proceedings summarily assessed at £12,703 (being £10,000 issue fee, £303 application fee and £2,400 in legal costs).

Ahora, en su *Petición de Exequatur*, Global también expuso alegaciones en contra del demandado Sr. Stan Bodzick (señor Bodzick), presidente y agente residente de Falcon. En particular, adujo que el señor Bodzick, como miembro de Falcon, era responsable en su carácter personal al recibir una distribución en violación al Artículo 19.50 (A) de la Ley General de Corporaciones, *infra*, y al haber disuelto a Falcon con el único propósito de evadir las responsabilidades de dicha entidad con Global.[4] En torno a esta reclamación, el TPI dispuso:

Toda vez que la Sentencia cuya validez aquí se convalida se dictó el **19 de diciembre de 2024** —fecha muy posterior a la disolución de Falcon Financial, LLC el **4 de diciembre de 2023**— y toda vez que bajo dicho procedimiento no se incluyó como parte al Sr. Stan Bodzick, y tampoco se solicitó enmendar la referida Sentencia para incluirle como parte, este Tribunal está impedido de modificar la referida Sentencia bajo el procedimiento de *Exequatur*. (Énfasis nuestro).

La decisión judicial fue sostenida el 10 de julio de 2025, mediante una *Orden*,[5] luego que Global interpusiera una oportuna *Moción solicitando reconsideración parcial*.[6] En específico, el TPI reiteró

---

[4] Véase, entrada 1 acápite 9 en el SUMAC.
[5] Entrada 19 en el SUMAC.
[6] Entrada 18 en el SUMAC.

que el dictamen convalidado mediante el procedimiento de *exequatur* "**nada dispone** en contra del Sr. Stan Bodzick en su carácter personal...". (Énfasis en el original).

Inconforme, Global acudió ante nos el 18 de noviembre de 2025 y señaló el siguiente error:

> ERRÓ EL TPI AL DENEGAR LA SOLICITUD DE LA PARTE COMPARECIENTE BAJO EL ARTÍCULO 19.50 DE LA LEY DE CORPORACIONES.

El 21 de noviembre de 2025, emitimos una *Resolución* y concedimos a Falcon un término de 30 días, a partir de la presentación del *Recurso de Apelación,* para que instara su alegato. Transcurrido el plazo, Falcon no compareció. Toda vez que apercibimos al apelado de que, luego de vencido el término dispuesto, dispondríamos del recurso apelativo, procedemos a resolver sin el beneficio de su postura.

## II.

### A.

La Regla 55 de Procedimiento Civil, 32 LPRA Ap. V, R. 55, regula el *exequatur*. El *exequatur* se define como el "procedimiento de convalidación y reconocimiento judicial de una sentencia de otra jurisdicción por los tribunales del foro donde se pretende hacer efectiva". 32 LPRA Ap. V, R. 55.1. Este proceso puede ser mediante un trámite *ex parte* u ordinario. En este último caso, la parte promovente debe presentar **una demanda en contra de todas las personas afectadas por la sentencia de otra jurisdicción, cuya convalidación y reconocimiento se solicita**. 32 LPRA Ap. V, R. 55.2.

Como se sabe, el *exequatur* se requiere para validar las sentencias dictadas por las jurisdicciones fuera del Estado Libre Asociado de Puerto Rico, provenientes de tribunales estatales de Estados Unidos o de países extranjeros. *Gulf Petroleum v. Camioneros,* 199 DPR 962, 966 (2018). El Tribunal Supremo de Puerto Rico ha pautado que "el propósito de la acción de reconocimiento o de *exequatur* es garantizar el debido proceso de ley a las partes afectadas

por la ejecutoria extranjera y concederles una oportunidad razonable para presentar sus defensas y ser escuchadas". *Rodríguez Contreras v. E.L.A.*, 183 DPR 505, 517 (2011); *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369 (2009); *Mench v. Mangual*, 161 DPR 851 (2004).

En atención al caso del título, que versa sobre una sentencia dictada en una jurisdicción extranjera de los Estados Unidos y sus territorios, el tribunal debe procurar el cumplimiento de lo siguiente: (1) que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma; (2) que se haya dictado por un tribunal competente; (3) que el tribunal que la emitió haya observado los principios básicos del debido proceso de ley; (4) que el sistema bajo el cual fue dictada se distinga por su imparcialidad y por la ausencia de prejuicio contra las personas extranjeras; (5) que no sea contraria al orden público; (6) que no sea contraria a los principios básicos de justicia, y (7) que no se haya obtenido mediante fraude. 32 LPRA Ap. V, R. 55.5 (b); además, *Márquez Estrella, Ex parte*, 128 DPR 243 (1991); *Silva Oliveras v. Dúran Rodríguez*, 119 DPR 254 (1987); *Ef. Litográficos v. Nat. Paper & Type Co.*, 112 DPR 389 (1982).

Al aplicar los criterios antes mencionados, debe tenerse presente que "[l]a comisión por el tribunal extranjero de errores de hechos o de derecho no tiene pertinencia al asunto de la procedencia de la convalidación y ejecución de la sentencia en este foro". J.A. Cuevas Segarra, *Las medidas cautelares y la ejecución de sentencia*, Barcelona, Bosch Editor, 2020, págs. 669-670. Asimismo, la doctrina ha comentado que **no es permisible la revisión en sus méritos de las sentencias extranjeras**. *Id.*, pág. 669.

**B.**

Una compañía de responsabilidad limitada (CRL o LLC, por sus siglas en inglés) "es una entidad no incorporada con personalidad

jurídica propia, **separada de los miembros que la constituyen**"[7] y organizada por virtud del Capítulo XIX de la Ley Núm. 164 de 16 de diciembre de 2009, *Ley General de Corporaciones*, 14 LPRA sec. 3501 *et seq.*, (Ley Núm. 164-2009). Véase, C. Díaz Olivo, *Corporaciones: Tratado Sobre Derecho Corporativo*, 2da. ed. del autor, 2016, pág. 569; 14 LPRA sec. 3951(e). El contrato de la compañía de responsabilidad limitada (CCRL) constituye la fuente primordial de regulación de la entidad; mientras que la Ley Núm. 164-2009 viene a suplir aquellas cuestiones omitidas en el CCRL. Díaz Olivo, *op. cit.*, págs. 570, 573; 14 LPRA sec. 3951(g). Una vez se constituye una CRL, su existencia es perpetua, salvo que otra cosa disponga el CCRL, o se disuelva bajo las causas que establece el Artículo 19.47 de la Ley Núm. 164-2009, 14 LPRA sec. 3997.

En torno a la cuestión presentada en este caso, el Artículo 19.50 de la Ley Núm. 164-2009, 14 LPRA sec. 4000, aplicable a la CRL, dispone así:

> **Artículo 19.50. —** *Distribución de los Activos.*
>
> A. **Al momento de la conclusión de los asuntos de la CRL, los activos deberán ser distribuidos** como sigue:
>
> 1. **A los acreedores**, incluyendo miembros y administradores que son acreedores, hasta donde sea permitido por ley, en satisfacción de las obligaciones de la CRL (bien sea por pago o haciendo las reservas razonables para su pago) que no sean obligaciones para las cuales se hayan hecho reservas razonables para su pago y obligaciones por distribuciones a miembros y a antiguos miembros bajo los Artículos 19.35 a 19.38 de esta Ley.
>
> .   .   .   .   .   .   .   .
>
> B. **Una CRL que se ha disuelto (i) debe pagar o hacer los arreglos razonables para pagar todas las reclamaciones y obligaciones, incluyendo todas las contingentes, condicionales o las reclamaciones contractuales no vencidas, conocidas por la CRL**; (ii) deberá hacer aquellos arreglos que con razonable probabilidad serán suficientes para proveer compensación por cualquier reclamación en contra de la CRL que sea objeto de un pleito, acción o procedimiento pendiente del cual la CRL es parte; **y** (iii) **deberá hacer aquellos arreglos que con razonable probabilidad será[n] suficientes para proveer compensación por reclamaciones que no le han sido presentadas a la CRL o que no han surgido pero que, basado en los hechos**

---

[7] Énfasis nuestro.

**conocidos por la CRL, tiene probabilidad de surgir o ser presentadas a la CRL, dentro de los 10 años después de la fecha de disolución**. Si hay fondos suficientes, dichas reclamaciones y obligaciones deberán ser pagadas por completo y dichos arreglos para pago deberán ser hechos en su totalidad. Si los fondos no fueran suficientes, dichas reclamaciones y obligaciones deberán ser pagadas o los arreglos hechos de acuerdo a su prioridad y, entre las reclamaciones de igual prioridad, a prorrata hasta donde haya fondos disponibles. Salvo que se disponga lo contrario en el CCRL, cualquier activo que sobre deberá ser distribuido de la forma dispuesta en esta Ley.

.   .   .   .   .   .   .   .

C. **Un miembro que reciba una distribución en violación del inciso (A) de este Artículo, y que sabía al momento de la distribución que la distribución violaba el inciso (A) de este Artículo, será responsable a la CRL por el monto de la distribución**. [...] Sujeto al inciso (D) de este Artículo, este inciso no afectará ninguna obligación o responsabilidad de un miembro bajo un acuerdo u otra ley aplicable por el monto de la distribución. (Énfasis nuestro).

El profesor Díaz Olivo destaca que el precitado articulado establece el orden de distribución de los activos cuando se liquida la CRL; a saber: acreedores, distribuciones a los miembros y, finalmente, las aportaciones de éstos. "**Los acreedores de la CRL son los que ocupan el primer lugar en la relación de prioridades respecto a las reclamaciones existentes contra el patrimonio de la CRL**". (Énfasis nuestro). Díaz Olivo, *op. cit.*, pág. 588. Añade el comentarista:

**Para atender las reclamaciones de los acreedores, la CRL debe ocuparse de hacer los arreglos razonables que fueren necesarios para pagar todas las obligaciones**, incluyendo las que aún hayan vencido y aquellas de naturaleza contingente o condicional. Respecto a éstas, es necesario hacer arreglos razonables para atender aquellas reclamaciones que, basado en los **hechos que son conocidos por la entidad, tienen probabilidad de surgir o ser presentadas dentro de los diez años siguientes a la fecha de disolución**. Si los fondos disponibles no fuesen suficientes, estas reclamaciones y obligaciones se pagaran de acuerdo a su prioridad, y con respecto a las de igual prioridad será a prorrata hasta donde haya fondos disponibles.

Cualquier acreedor, miembro o administrador de la CRL, con justa causa, puede solicitar del Tribunal de Primera Instancia la designación de un síndico o administrador judicial para que se haga cargo del patrimonio de la entidad, cobre los créditos, recobre los bienes de la

corporación y entable todos los litigios que sean necesarios para adelantar tales fines. (Énfasis nuestro). *Id.*

**III.**

En la causa de autos, Global alega que el TPI incidió al denegar su petición de responsabilizar al señor Bodzick, en su carácter personal, toda vez que era un miembro de Falcon que, según sus imputaciones, recibió una distribución en contravención al inciso (A) del Artículo 19.50 de la Ley General de Corporaciones, *supra*. Global asevera también que la disolución de Falcon el 4 de diciembre de 2023 fue realizada para evadir sus obligaciones.

Somos del criterio que el TPI actuó correctamente al validar el dictamen extranjero, no así al disponer de la reclamación de Global en torno las presuntas actuaciones del señor Bodzick. Veamos.

Es norma asentada que una de las características principales de las corporaciones o compañías es contar con una personalidad jurídica distinta y separada a la de sus dueños o miembros. Véanse, Art. 217 del Cód. Civil, 31 LPRA sec. 5862; *Multinational Ins. v. Benítez y otros*, 193 DPR 67, 76 (2015); *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011); *Peguero y otros v. Hernández Pellot*, 139 DPR 487, 502 (1995). Si no se reconociese esta característica de los entes corporativos, "se destruiría el principio de responsabilidad limitada que es consustancial con la ficción corporativa". *Fleming v. Toa Alta Develop. Corp.*, 96 DPR 240, 244 (1968). Además, la conclusión de que se han manejado los negocios con propósitos de defraudar, como alega Global acerca de Falcon, es un asunto que debe demostrarse. *Id.*

A la luz de lo anterior, en vista que el proceso versa sobre un procedimiento de ejecución de sentencia mediante *exequatur*, tramitado por la vía ordinaria, en que el foro evaluador está impedido de revisar el dictamen que convalida, procede confirmar la *Resolución* impugnada, en cuanto a la validación de la *Sentencia* extranjera.

Según fundamentó el TPI y conforme surge del dictamen de Reino Unido sometido al proceso de *exequatur*, las partes litigantes fueron Global y Falcon. Es decir, el señor Bodzick nunca formó parte del pleito en Reino Unido y, por consiguiente, no es una persona afectada por la determinación judicial allí dictada, cuya convalidación se solicitó y se concedió. Ciertamente, el TPI no tiene autoridad para condenar por *fiat judicial* a una persona natural, en el proceso de convalidación de una sentencia extranjera en contra de una persona jurídica. Empero, sí debe dar atención y finalidad a todas las reclamaciones de Global, sobre todo, cuando el ordenamiento legal provee las bases necesarias para atender sus alegaciones. Recuérdese que en una demanda se admite la inclusión de distintos asuntos y la solicitud de remedios alternativos o de diversa naturaleza.[8] En este caso, Global no sólo peticionó la convalidación de un dictamen extranjero mediante *exequatur*, sino que realizó imputaciones contra el señor Bodzick, las cuales no han sido resueltas.

En fin, si bien Falcon se disolvió en 2023, —antes de emitirse el dictamen condenatorio en su contra en 2024, convalidado en *exequatur* en 2025— la Ley Núm. 164-2009 pauta la preeminencia de los acreedores en la distribución de los activos de una CRL ante una disolución; y los legitima a accionar el pago de sus acreencias dentro de los 10 años después de la fecha de disolución, término que no ha transcurrido. Claro está, Global imputa al señor Bodzick, quien fue debidamente emplazado por edicto, haber disuelto a Falcon "con el único propósito de evadir las responsabilidades de dicha entidad con la parte aquí compareciente, Global". Decididamente, estas alegaciones están sujetas a prueba, por lo que se requiere la celebración de una vista evidenciaria tendente a demostrar las imputaciones argüidas por Global, en la distribución de los activos de

---

[8] Véase, Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V.

Falcon, conforme establece la Ley Núm. 164-2009. En aras de la economía procesal, este asunto debe dilucidarse en el mismo procedimiento judicial.

**IV.**

Por los fundamentos expuestos, modificamos la *Resolución* impugnada. Primero, confirmamos la convalidación de la *Sentencia* dictada en el Reino Unido el 19 de diciembre de 2024, por el *County Court at Central London*, en el caso *Global Investment Strategy UK Limited, Claimant v. Falcon Financial LLC, Defendant.* Segundo, retornamos el caso ante la consideración del Tribunal de Primera Instancia, para la celebración de una vista evidenciaria y dirimir la reclamación de Global Investment Strategy UK Limited contra el Sr. Stan Bodzick, al palio de la Ley Núm. 164 de 16 de diciembre de 2009, *Ley General de Corporaciones,* 14 LPRA sec. 3501 *et seq.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones