ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ALBERT LEE SENN, JR., KENNETH JOSEPH SENN, TIMOTHY MARTIN SEEN, MARY ROSE SENN, LISA MICHELL SENN, GREGORY ALAN SENN<br><br>APELANTES<br><br><br>EX PARTE | TA2026AP00046 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Luquillo<br><br>Caso Núm.: LU2025CV00209<br><br>Sobre: Exequátur, Preterición y Declaratoria de Herederos |
| ALBERT LEE SENN, JR., KENNETH JOSEPH SENN, TIMOTHY MARTIN SEEN, MARY ROSE SENN, LISA MICHELL SENN, GREGORY ALAN SENN<br><br>APELANTES<br><br><br>EX PARTE | TA2026AP00047 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Luquillo<br><br>Caso Núm.: LU2025CV00210<br><br>Sobre: Exequátur, Preterición y Declaratoria de Herederos |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de febrero de 2026.

Mediante recursos de *Apelación* consolidados comparecen ante este foro lo señores Albert Lee Senn, Jr., Kenneth Joseph Senn, Timothy Martin Senn, Mary Rose Senn, Lisa Senn y Gregory Alan Senn (en conjunto, los apelantes), y nos solicitan que revisemos dos sentencias emitidas por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante, TPI o foro primario), mediante las cuales el foro primario desestimó con perjuicio la totalidad del pleito incoado por los apelantes.

Por los fundamentos que exponemos a continuación, se modifica el dictamen apelado para que la desestimación sea sin perjuicio, y así se *confirman* los dictámenes apelados.

**I.**

El 12 de noviembre de 2025 los apelantes presentaron una *Petición*[1] ex parte, a la cual se le asignó el alfanumérico LU2025CV00209, sobre exequátur, preterición y declaratoria de herederos. Alegaron ser todos hijos del causante Albert Lee Senn (en adelante, señor Albert Senn o el causante), quien había fallecido el 15 de marzo de 2006 en Kentucky, Estados Unidos, estando casado con la señora Helen Dolores Dunn también conocida como Helen Senn (en adelante, señora Helen Senn o la causante). Señalaron que el causante había otorgado un testamento en el estado de Kentucky en el que había designado como su única heredera a su esposa, la señora Helen Senn y, de esta premorirle, a sus hijos por partes iguales.

A su vez indicaron que, debido a que la señora Helen Senn le sobrevivió al causante, ellos, como herederos forzosos del causante, habían sido preteridos conforme la disposición contenida en el testamento. Por ello, solicitaron al tribunal que: (1) mediante un proceso de exequátur, convalidara el testamento otorgado en Kentucky para que tuviera validez en Puerto Rico; (2) determinara que el testamento era inoficioso en esta jurisdicción por haber preterido a los hijos del causante; (3) declarase como únicos y universales herederos del causante a los aquí apelantes y a su viuda, la señora Helen Senn, en la cuota viudal usufructuaria; y (4) ordenara al Registro de la Propiedad inscribir el derecho hereditario de estos en las propiedades inmuebles inscritas a nombre del señor Albert Senn.

En la misma fecha, los apelantes presentaron otra *Petición*[2] ex parte, a la cual se le asignó el alfanumérico LU2025CV00210, sobre exequátur y

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, en el caso LU2025CV00209.
[2] Entrada Núm. 1 del SUMAC del TPI, en el caso LU2025CV00210.

declaratoria de herederos. En esta, alegaron ser hijos de la señora Helen Senn, quien había fallecido el 2 de septiembre de 2018, habiendo otorgado testamento en el estado de Kentucky. Indicaron que, en su testamento, la señora Helen Senn había designado como su único heredero a su esposo, el señor Albert Senn y, de este premorir, a sus hijos por partes iguales.

Agregaron que, toda vez que el señor Albert Senn le premurió a la causante, ellos eran los únicos y universales herederos de la causante. A esos efectos, solicitaron al tribunal que: (1) convalidara el testamento otorgado por la causante en Kentucky, mediante el mecanismo de exequátur; (2) declarara a los apelantes como únicos y universales herederos de la señora Helen Senn; y (3) ordenase al Registro de la Propiedad inscribir el derecho hereditario de estos en las propiedades inmuebles inscritas a nombre de la causante.

El 18 de noviembre de 2025 el TPI emitió una *Sentencia*[3], notificada el 21 de noviembre de 2025, en la cual, con relación al exequátur, declaró No Ha Lugar la *Petición* presentada en el caso LU2025CV00209. Según concluyó el foro primario, la *Petición* de los apelantes no podía atenderse mediante el referido mecanismo ya que lo solicitado en el caso realmente se trataba de una declaratoria de herederos y derecho de sucesiones, por lo cual refirió el caso a la sala civil correspondiente para que se continuaran con los trámites de la declaratoria de derechos y de sucesiones conforme la Orden Administrativa 2025-2026-04.

Insatisfechos, el 3 de diciembre de 2025, los apelantes presentaron una *Moción Solicitando Reconsideración*[4] en la que alegaron que la *Petición* incluía dos solicitudes de remedios: la primera era la convalidación del testamento mediante el exequátur y la segunda relativa a la preterición y declaratoria de herederos del causante Albert Senn. Fundamentaron su solicitud de reconsideración en que las Reglas de Procedimiento Civil permiten la

---

[3] Entrada Núm. 3 del SUMAC del TPI, en el caso LU2025CV00209.
[4] Entrada Núm. 4 del SUMAC del TPI, en el caso LU2025CV00209.

acumulación de reclamaciones y argumentaron que para poder continuar con el proceso de declaratoria de herederos necesitaban primero obtener la convalidación del testamento.

Atendida la *Moción Solicitando Reconsideración*, el 10 de diciembre de 2025 el TPI emitió una *Sentencia*[5] final en el caso LU2025CV00209 y el 11 de diciembre de 2025 emitió y notificó la misma *Sentencia*[6] en el caso LU2025CV00210, ello toda vez que, según se desprende del epígrafe de la sentencia, el foro primario consolidó las peticiones *motu proprio*. Mediante su dictamen, el TPI reconsideró su determinación previa y desestimó la totalidad de ambos pleitos con perjuicio. En su análisis, el foro primario concluyó que según las alegaciones de los apelantes las reclamaciones no eran justiciable ya que no había un caso o controversia real que ameritara la intervención del tribunal.

Aún inconformes, el 9 de enero de 2026 los apelantes presentaron un mismo recurso de *Apelación* sobre los dos casos en el foro primario, por lo cual se asignaron dos casos diferentes ante este Foro: el primero asignado al alfanumérico TA2026AP00046 y el segundo asignado al alfanumérico TA2026AP00047. En su recurso, los apelantes señalan que el TPI cometió los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TPI AL CONCLUIR QUE LAS REGLAS DE PROCEDIMIENTO CIVIL NO PERMITEN LA ACUMULACIÓN DE ACCIONES POR LO CUAL DESESTIM[Ó] LA SOLICITUD DE EXEQUÁTUR.**
>
> **SEGUNDO ERROR: ERRÓ EL TPI AL DECIDIR QUE LOS CASOS NO SON JUSTICIABLES BASADO EN QUE LOS APELANTES PUEDEN REALIZAR "LA CORRESPONDIENTE LIQUIDACIÓN Y PARTICIÓN DE LA COMUNIDAD HEREDITARIA DE FORMA EXTRAJUDICIAL EN ATENCIÓN A LO DISPUESTO EN EL CÓDIGO CIVIL DE PUERTO RICO".**
>
> **TERCER ERROR: ERRÓ EL TPI AL DESESTIMAR AMBOS CASOS CON PERJUICIO PRIVANDO A LOS APELANTES DE SU DERECHO A LA HERENCIA CONTRARIO A LEY Y LAS CONSTITUCIONES DE LOS ESTADOS UNIDOS Y DE PUERTO RICO.**

---

[5] Entrada Núm. 5 del SUMAC del TPI, en el caso LU2025CV00209.
[6] Entrada Núm. 3 del SUMAC del TPI, en el caso LU2025CV00210.

El 22 de enero de 2026 este Tribunal emitió una *Resolución* mediante la cual consolidó *motu proprio* ambos recursos.

**II.**

**A. El procedimiento de exequátur**

En nuestro ordenamiento jurídico las sentencias y órdenes dictadas por los tribunales de un estado de la Unión o de un país extranjero no operan en forma directa o *ex proprio vigore*. *Colón Vega v. Díaz Lebrón*, 211 DPR 548, 557 (2023); *Rodríguez Contreras v. ELA*, 183 DPR 505, 516-517 (2011). Para que estas se puedan ejecutar o hacer efectivas en nuestra jurisdicción es preciso que antes sean reconocidas y validadas por nuestros tribunales locales por vía del procedimiento denominado exequátur. *Colón Vega v. Díaz Lebrón, supra*; *Rodríguez Contreras v. ELA, supra*, págs. 513-514. El propósito de este mecanismo es garantizar el debido proceso de ley de las partes afectadas por una sentencia extranjera cuya ejecución se pretende, asegurándoles una oportunidad razonable para comparecer, presentar sus defensas y ser escuchadas. *Rodríguez Contreras v. ELA, supra*, pág. 517; *Toro Avilés v. PR Telephone Co.*, 177 DPR 369, 375 (2009); *Mench v. Mangual*, 161 DPR 851, 856 (2004).

A esos efectos, la Regla 55.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 55.1, dispone que "[s]e llama exequátur al procedimiento de **convalidación y reconocimiento judicial de una sentencia** de otra jurisdicción por los tribunales del foro donde se pretende hacer efectiva. Su trámite puede ser ex parte u ordinario." (Énfasis nuestro). Esta Regla aplica a toda sentencia dictada por un tribunal fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico, incluyendo sentencias extranjeras dictadas tanto por los tribunales estatales de los Estados Unidos, como por los tribunales de países extranjeros. *Toro Avilés v. PR Telephone Co., supra*, pág. 376.

A su vez, la Regla 55.5, 32 LPRA Ap. V, R. 55.5, establece los requisitos que debe cumplir toda sentencia extranjera que se pretenda convalidar y

reconocer en nuestra jurisdicción. La citada disposición establece una distinción entre los requisitos para las sentencias dictadas por un estado de Estados Unidos de América o sus territorios *vis a vis* las sentencias extranjeras provenientes de otras jurisdicciones. No obstante, el proceso sigue siendo dirigido al mismo tipo de casos relacionados con **sentencias** dictadas por tribunales que no formen parte de la jurisdicción puertorriqueña. *Toro Avilés v. PR Telephone Co., supra.* (Énfasis nuestro).

De otra parte, cabe destacar que en el procedimiento de exequátur el tribunal "**no podrá entrar a considerar los méritos de una sentencia extranjera, si no que se limitará, luego de resolver los planteamientos de índole procesal que sean pertinentes, a determinar si la sentencia extranjera cumplió con todas las normas de Derecho Internacional Privado**." *Mench v. Mangual, supra.* (Énfasis nuestro). Por ello, solo se admitirá prueba sobre aquella parte de los méritos, si alguna, que sea necesaria para esclarecer la aplicación de las normas antes esbozadas, respecto a la procedencia o no del exequátur. *Rodríguez Contreras v. ELA, supra,* pág. 519; *Ef. Litográficos v. Nat. Paper & Type Co.,* 112 DPR 389, 405 (1982).

### B. Sucesión testamentaria y la preterición

La sucesión es la transmisión de los derechos y obligaciones del difunto a sus herederos. Art. 599 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2081.[7] El Artículo 604 del Código Civil, 31 LPRA sec. 2086, dispone que la sucesión se define "por la voluntad de la persona manifestada en testamento y, a falta de ésta, por disposición de ley", siendo la primera la sucesión testamentaria y la segunda la sucesión legítima. De tal forma, el título de una sucesión surge por testamento o por declaratoria de

---

[7] A pesar de que el Código Civil de Puerto Rico de 2020 derogó el Código Civil de 1930, el Artículo 1816 del Código actual, 31 LPRA sec. 11721, dispone que: "[l]os derechos a la herencia de quien ha fallecido, con testamento o sin él, antes de entrar en vigor este Código, se rigen por la legislación anterior." En consecuencia, ya que ambos causantes en este caso fallecieron con anterioridad a que el Código nuevo entrara en vigor, haremos referencia a las disposiciones pertinentes en la legislación anterior.

herederos. *Miranda Meléndez v. Registrador*, 193 DPR 862, 875 (2015). No obstante, hay situaciones en que la sucesión podrá ser determinada en parte por voluntad del hombre, y en otra por disposición de ley. Art. 604 del Código Civil, *supra.*

El Artículo 616, 31 LPRA sec. 2121, define el testamento como el acto por el cual una persona dispone de todos sus bienes, o parte de ellos, para después de su muerte. Mediante el testamento, el testador que tuviere herederos forzosos no puede disponer de la legítima, que es la porción de la herencia que la ley reserva para esos herederos forzosos. Art. 735 del Código Civil, 31 LPRA sec. 2361. Son herederos forzosos:

> (1) Los hijos y descendientes legítimos respecto de sus padres y ascendientes legítimos, y los hijos naturales legalmente reconocidos respecto de sus padres y ascendientes naturales o legítimos.
>
> (2) A falta de los anteriores, los padres y ascendientes legítimos respecto de sus hijos y descendientes legítimos.
>
> (3) El viudo o viuda en la forma o medida que establecen los Artículos 761, 762, 763, y 764 de este Código. Art. 736 del Código Civil, 31 LPRA sec. 2362.

Conforme a la anterior, la legítima constituye "una garantía de participación mínima sobre el caudal hereditario" a determinados parientes del testador, cuyo orden y participación específica establece la ley. *Moreda v. Roselli*, 141 DPR 674, 683 (1996). Es decir, el testador no podrá privar a los herederos forzosos de su legítima sino en los casos expresamente determinados por la ley. Art. 741 del Código Civil, 31 LPRA sec. 2367.

En caso de que el testador no haga una institución a favor de un heredero forzoso, en cualquier concepto, se da la figura de la preterición. *Blanco v. Sucn. Blanco Sancio*, 106 DPR 471, 475 (1977). La preterición se ha definido por la doctrina española como "la inexistencia total de disposición patrimonial de un heredero forzoso en línea recta, nacido ya o meramente concebido al tiempo de la muerte del testador". *Id.* Es decir, la preterición de un legitimario "se funda en un concepto económico patrimonial". *Id.* No

obstante, si en el testamento se le deja a un heredero forzoso, por cualquier título, una porción menor a la que por ley le corresponde, no se configura la preterición, sino que este tendrá el derecho de solicitar el complemento a su legítima. Art. 743 del Código Civil, 31 LPRA sec. 2369; *Moreda v. Roselli*, *supra*, págs. 683-684.

El Artículo 742 del Código Civil, 31 LPRA sec. 2368, establece que: "[l]a preterición de alguno o de todos los herederos forzosos en línea recta, sea que vivan al otorgarse el testamento o sea que nazcan después de muerto el testador, anulará la institución del heredero; pero valdrán las mandas y mejoras en cuanto no sean inoficiosas." En cuyo caso, el testamento no es nulo, pero sí la institución de herederos, lo cual da lugar a que se abra una sucesión intestada. En lo pertinente, establece el Artículo 875 del Código Civil, 31 LPRA sec. 2591, que la sucesión legítima (o intestada) tendrá lugar, entre otras circunstancias, cuando un causante muere sin testamento, o con testamento nulo, o que haya perdido después su validez.

Ahora bien, antes de que un tribunal en Puerto Rico pueda evaluar los efectos de un testamento —como lo relacionado con la sucesión, la legítima o la posible preterición de herederos forzosos— es necesario, primero, que dicho instrumento sea reconocido como válido en nuestra jurisdicción. Esto cobra especial importancia cuando, como ocurre en el caso de autos, se trata de testamentos otorgados fuera de Puerto Rico, ya que su eficacia local depende del cumplimiento de ciertos requisitos formales establecidos por ley.

En ese contexto, corresponde examinar el marco jurídico aplicable a la protocolización y al reconocimiento en Puerto Rico de testamentos otorgados en otras jurisdicciones.

### C. Testamentos otorgados fuera de Puerto Rico

El Artículo 10 del Código Civil, 31 LPRA sec. 10[8], establece que los bienes muebles se rigen por la ley de la nación del propietario, mientras que

---

[8] Véase nota al calce numero 7.

los bienes inmuebles están sujetos a las leyes del país donde se encuentran ubicados. Por su parte, el Artículo 11 del Código Civil, 31 LPRA sec. 11, dispone que "[l]as formas y solemnidades de los contratos, testamentos y demás instrumentos públicos, se rigen por las leyes del país en que se otorguen."

Cónsono con lo anterior, nuestro Tribunal Supremo ha reiterado que, "para que se inscriba en Puerto Rico un testamento otorgado fuera de esta jurisdicción, compete a la parte interesada en ello acreditar que se cumplieron en su otorgamiento las formas y solemnidades requeridas por las leyes del lugar de su otorgamiento". *Cabrer v. Registrador*, 113 DPR 424, 433 (1982); *Vda. de Ruiz v. Registrador*, 93 DPR 914, 921 (1967). No obstante, en el presente caso no está en controversia si los testamentos otorgados por ambos causantes cumplieron con las formas y solemnidades requeridas por ley en el estado de Kentucky, donde se otorgaron. El asunto que nos compete es, más bien, el mecanismo mediante el cual dichos testamentos pueden adquirir eficacia jurídica dentro de nuestro ordenamiento, donde están sitos los inmuebles propiedad de los causantes.

A tales fines, nuestro ordenamiento jurídico exige que los documentos otorgados fuera de Puerto Rico sean protocolizados para que adquieran eficacia como instrumentos públicos en esta jurisdicción. Art. 38 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2056; Art. 12 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley 210-2015, según enmendada, 30 LPRA sec. 6019 (en adelante, Ley del Registro de la Propiedad Inmobiliaria).

En esa misma línea, la Regla 41 del Reglamento Notarial, 4 LPRA Ap. XXIV, establece los requisitos específicos para la protocolización de documentos otorgados fuera de Puerto Rico. En particular, la referida Regla dispone que dichos documentos deberán ser protocolizados para que tengan eficacia de instrumento público en esta jurisdicción y que, como requisito

previo, deberán estar debidamente legitimados por un notario o funcionario autorizado para desempeñar esta tarea en la jurisdicción de origen.

Asimismo, resulta pertinente lo dispuesto en el Artículo 12 de la Ley del Registro de la Propiedad Inmobiliaria, *supra*, el cual enumera los requisitos que deben cumplirse para que un documento otorgado fuera de Puerto Rico pueda acceder al Registro de la Propiedad, a saber:

1. Que el asunto o materia del acto o contrato sea lícito y permitido por las leyes del Estado Libre Asociado de Puerto Rico.

2. Que los otorgantes tengan la aptitud y capacidad legal necesarias para el acto o contrato con arreglo a las leyes del país de otorgamiento.

3. Cuando se relacionen con bienes de menores de edad y de incapacitados, deberá haberse dado cumplimiento a las disposiciones legales vigentes en el Estado Libre Asociado de Puerto Rico.

4. Que el documento haya sido legalizado por la autoridad competente del país donde fue otorgado y contenga los requisitos necesarios para su autenticación en el Estado Libre Asociado de Puerto Rico.

5. **Que el documento haya sido protocolizado por un notario en el Estado Libre Asociado de Puerto Rico, si para su eficacia no se requiere trámite judicial.** Si el Registrador lo solicita, deberá acreditarse que en el otorgamiento del documento protocolizado se observaron las formas y solemnidades requeridas por las leyes del lugar en el que se otorgaron los actos o contratos, o en su defecto, las de Puerto Rico.

6. Se consideran documentos auténticos que no requieren protocolización, los títulos de cesiones o traspasos de propiedad inmueble u otros derechos reales llevados a cabo por funcionarios competentes del Gobierno de los Estados Unidos de América, sus agencias, corporaciones o instrumentalidades públicas a favor del Estado Libre Asociado de Puerto Rico, sus agencias, corporaciones o instrumentalidades públicas o sus subdivisiones políticas. *Id.* (Énfasis nuestro).

En síntesis, cuando se trata de testamentos otorgados fuera de Puerto Rico, para que estos puedan acceder al Registro de la Propiedad o puedan ser eficaces respecto a bienes inmuebles sitos aquí, es necesario que cumplan con los requisitos formales establecidos por la ley del lugar de otorgamiento y con su debida protocolización conforme a las disposiciones de nuestro ordenamiento jurídico.

**III.**

En el presente caso, del récord surge que los apelantes acudieron al foro primario mediante peticiones ex parte solicitando, entre otros remedios, la convalidación de los testamentos otorgados en el estado de Kentucky mediante el procedimiento de exequátur, la determinación de preterición respecto al testamento del señor Albert Senn, la declaratoria de herederos de ambos causantes y la inscripción de derechos hereditarios en el Registro de la Propiedad.

Sin embargo, conforme al derecho antes expuesto, el procedimiento de exequátur tiene como finalidad el reconocimiento y la convalidación en Puerto Rico de **sentencias** dictadas por tribunales de otras jurisdicciones, y no constituye el mecanismo adecuado para darle eficacia a documentos notariales otorgados fuera del país, como lo son los testamentos en el caso de autos.[9] Para que estos produzcan efectos en nuestra jurisdicción, es necesario que cumplan con los requisitos formales de la jurisdicción del lugar de otorgamiento y luego sean protocolizados ante notario en Puerto Rico.

Del expediente no surge que los apelantes hayan instado la protocolización de los testamentos otorgados por los causantes como paso previo a presentar los recursos solicitados referentes a la preterición y declaratorias de herederos. En ausencia de dicho trámite, el foro primario carecía de fundamentos para evaluar los efectos sucesorios de esos instrumentos, incluyendo los señalamientos relacionados con la legítima y la alegada preterición de los herederos forzosos del causante Albert Senn. Además, como señalamos anteriormente, aún si el trámite aplicable hubiese sido el procedimiento de exequátur por tratarse de sentencias extranjeras, el

---

[9] No obstante, es pertinente reconocer que, en el caso de testamentos ológrafos, por disposición expresa del Artículo 639 del Código Civil, 31 LPRA sec. 2163, este deberá protocolizarse, **presentándolo a la sala del Tribunal Superior del último domicilio del testador**, o a la del lugar en que éste hubiese fallecido, si el fallecimiento hubiere tenido lugar en Puerto Rico. (Énfasis nuestro). Además, añade la citada norma que, sin cumplirse ese requisito, el mismo no será válido. *Id.* Sin embargo, los testamentos en el caso ante nuestra consideración no son testamentos ológrafos, sino que fueron testamentos abiertos otorgados frente a notarios autorizados en la jurisdicción de Kentucky. Véase Anejo 4 en las Entradas Núm. 1 del SUMAC del TPI, en los casos LU2025CV00209 y LU2025CV00210, respectivamente.

tribunal no podía entrar a los méritos de la sentencia en el mismo caso. *Mench v. Mangual, supra.* Es decir, no podía atender los planteamientos respecto a la preterición ni a la declaratoria de herederos en el mismo caso.

En ese contexto, lo procedente era que los apelantes gestionaran, en primer lugar, la protocolización de los testamentos y, a partir de ello, instaran en el tribunal la correspondiente petición de declaratoria de herederos en cuanto a la porción de la legítima que, conforme a ley, pudiera corresponder a los herederos forzosos del causante Albert Senn. Al no haberse seguido ese curso procesal, el TPI actuó correctamente al desestimar las peticiones presentadas.

Así las cosas, concluimos que el foro primario no erró al desestimar con perjuicio la totalidad del pleito. No obstante, concluimos que erró al desestimar la causa de acción de preterición y declaratoria de herederos con perjuicios. En su consecuencia, se modifica el dictamen para que la desestimación de dichas reclamaciones sea sin perjuicio, y así se confirman las sentencias apeladas.

**IV.**

Por los fundamentos que anteceden, modificamos los dictámenes apelados a los únicos fines de establecer que la desestimación de las reclamaciones sea sin perjuicio y así modificado, se confirman.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones